42  403
142m 300
42  403
s76  424

THOMPSON, PAYNE & Co., Plaintiffs in Error, v. IRWIN, ALLEN & Co., Defendants in Error.

Kansas City Court of Appeals, December 1, 1890.

1.  Warranty: PROCEEDINGS: EVIDENCE: ISSUES.  The proceedings and evidence in this case are set out and reviewed, and it is *held* that the issues are not only whether the defendants, commission merchants, sold the cattle in question as principals or agents, but the controlling issue is as to the ownership of the property.

2.  ———— : PRINCIPAL OR AGENT: SELLER OF STOLEN PROPERTY.  If the property is stolen, the seller is liable to the purchaser on his warranty, whether he sells as principal or agent, as, having no title to the property, he could convey none.

3. ———: CHATTELS IN POSSESSION: AGENCY. If the vendor has either actual or constructive possession, and sells the chattels, and not merely his interest therein, such sale is equivalent to an affirmation of the title and a warranty is implied; and the mere fact that the seller is acting as auctioneer, or other agent, is not, of itself, notice that they were not selling their own goods, and he must be deemed to have been the vendor, and responsible as such for title, unless he disclosed at the time the name of his principal.

4. ———: AGENT SIGNING AS PRINCIPAL. When a sale is made by an agent, and the purchaser preferring to trust the agent rather than the principal takes the written evidence of the sale signed by the agent as principal, the agent must be held to have assumed the responsibility of a principal, notwithstanding his business implies agency.

5. Evidence: VARYING WRITTEN CONTRACT. The rule that parol testimony will not be admitted to contradict or vary a written contract with its exceptions is discussed, and the cases reviewed, and it is found, that the courts of other states have been far more liberal in permitting parol evidence to be introduced to explain written contracts than the appellate courts of this state.

6. Warranty: PRINCIPAL AND AGENT. The defendants, commission merchants, are on the evidence in this case *held* to have stood in the place of owners and liable as warrantors, their principal having taken no part in the sale.

7. Evidence: PRINCIPAL AND AGENT: WEIGH TICKET AND DELIVERY ORDER: CONTRACT OF SALE. It is *held* in this case, that a weigh ticket and a delivery order, upon both of which were the words, "account of W. H. M.," are not instruments of such a character as to modify or control the written contract of sale, which had not upon it the name of "W. H. M.," being merely the incidents of the sale and not a part of it.

8. Principal and Agents: QUESTION FOR JURY. Whether defendants made the sale in issue in this case as principals or agents is a question for the jury under proper instructions.

9. Evidence: EXCLUSIVE COMMISSION BUSINESS: TITLE OF CONSIGNOR. While evidence of defendants being commission merchants was proper in this case, yet testimony that they did a commission business exclusively, and that it was not the custom for commission merchants to inquire as to the title of consignors is inadmissible.

10. ELLISON, J. (*dissenting*), holds,—

    (1) This being an action on an implied warranty, and not for trover and conversion, the only question in the case is, "Did the defendants make the sale as principal or agents?"

(2) "The contract of sale" is a mere receipt, bill of parcels or incomplete *memorandum*.

(3) The delivery order, not to say the weigh ticket, is a contemporaneous writing, and should be considered with the contract of sale, and that, considered together, it is clear that defendants acted as agents for "W. H. M.," and disclosed their agency on the face of the contract.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*Boggess & Moore*, for plaintiffs in error.

(1) As defendants, at the time and place of sale of the cattle mentioned in the record, had possession thereof and absolute power and dominion over the same, and did in fact sell and deliver for full and fair value, they must be held to have warranted the title. Benjamin on Sales [3 Ed.] sec. 243, and authorities cited in note "t"; section 641, note "i," on page 632, and authorities cited; *Schell v. Stephens*, 50 Mo. 375; *Sprague v. Rosenbaum*, 38 Fed. Rep. 388; *Hoffman v. Carew*, 20 Wend. 21-2; *Whitney v. Heywood*, 6 Cush. 82-6. (2) The written statement of the sale, read in evidence, is not a receipt; it is more than a bill of particulars. It is a contract of sale. It discloses the names of the vendors and vendees, describes the subject of the sale, the fact of the sale, states the consideration, and acknowledges the payment thereof. These elements make it a contract in the highest and most absolute sense of the term. As such, it was not subject to be changed in its force and effect by evidence outside of its contents. 1 Addison on Cont. [8 Am. Ed.] 66; *Schell v. Stephens*, 50 Mo. 375; Benj. on Sales [3 Ed.] sec. 641, note "i," p. 632; *Schattuck v. McKenzie*, 104 Mass. 42-5; *Thompson v. McCullough*, 31 Mo. 224; Story on Sales, 366-7; *Koehring v. Mueminghoff*, 61

Mo. 403 ; *Heywood v. Perrin*, 10 Reck, 228 ; *Forsyth v. Kimball*, 91 U. S. 291 ; *Sprague v. Rosenbaum*, 38 Fed. Rep. 398 ; *Whitney v. Heywood*, 6 Cush. 82–6. ( 3 ) There was, on the sale payment of the price of the cattle sold and delivered, a completed contract by reason of which, and by implication of law, defendants warranted the title to the property thereby sold, without regard to any writing whatever. 1 Ad. Cont. [ 8 Am. Ed.] p. 66 ; *Schell v. Stephens*, 50 Mo. 375 ; *Thompson v. McCullough*, 31 Mo. 224. ( 4 ) Testimony to show, that defendants were live-stock commission men, that it was not customary to inquire as to the title of those who consigned live stock to such men, at the Kansas City stockyards was irrelevant, immaterial and incompetent, because it did not tend to prove any fact in issue in the case, but it did mislead the jury to plaintiffs' prejudice. *Schell v. Stephens*, 50 Mo. 375 ; *Koehring v. Mueminghoff*, 61 Mo. 403 ; GRESHAM's opinion. ( 5 ) Even if the agent or broker disclose the name of his principal, yet, where he signs his own name, he is liable personally and may be sued on the contract. Benj. on Sales, 242, 641, note "i"; *Bank v. Morton*, 4 Gray, 156 ; *Wilder v. Cowles*, 100 Mass. 487 ; Story on Agency, secs. 366–7 ; *Schell v. Stephens*, 50 Mo. 375. ( 6 ) Where a person assumes to act as agent, he must disclose an actual, real and genuine principal ; anything short of this will leave the agent liable as principal. *Schell v. Stephens, supra;* *Blakely v. Benneke*, 59 Mo. 193 ; *Heath v. Goslin*, 80 Mo. 310 ; *Lapsley v. McKinsley*, 38 Mo. 245.

*Lathrop, Smith & Morrow*, for defendants in error.

( 1 ) Possession of personal property is only *prima facie* evidence of ownership, and the real ownership may be shown. *Miller v. Marks*, 20 Mo. App. 369. ( 2 ) Besides, at the time of the sale, the Kansas City Stock-yards Company was in actual possession of the cattle, and the order given by the defendants on said

company to deliver the cattle to plaintiffs, which accompanied the so-called bill of sale, disclosed on its face that the cattle were "sold for account of W. H. Moreland," the owner. (3) The sale of the cattle being made on July 5, 1879, all contemporaneous writings relating thereto are admissible in evidence, and all the surrounding circumstances should be taken into consideration in order to arrive at the real intention of the parties to the transaction in controversy. 1 Greenl. Ev. [Redf. Ed.] sec. 283; *Gwin v. Waggoner*, 98 Mo, 315; 11 Southwestern Reporter, 227, 230; 2 Taylor on Ev., sec. 1148; *Ins. Co. v. De Walt*, 8 Pick. 56; 1 Wait's Actions and Defenses, 118, 123; *Bowes v. Foster*, 2 H. & N. 779. (4) The so-called contract of sale is but a mere invoice or bill of parcels and receipt for the purchase money, and can be varied by parol. Greenl. Ev. [Redf. Ed.] sec. 305a; Benjamin on Sales [2 Ed.] sec. 662, note p., and cases cited; 1 Chitty on Contracts [11 Am. Ed.] p. 150, note e; Abbott's Trial Evidence, p. 6. (5) Although the invoice or bill of parcels was signed by defendants in their own name, it was competent to show by other evidence, either written or oral, and by all the surrounding circumstances, that defendants were acting throughout the whole transaction as agents and not as principals, and that the plaintiffs knew the character in which they were acting at the time. Evans on Principal and Agent, 360; *Holding v. Elliott*, 5 H. & N. 117; *Wilson v. Hart*, 7 Taunt. 295; *Moore v. Clementson*, 2 Camp. 22; *Roberts v. Austin*, 5 Wharton, 313. (6) If the defendants showed that they were acting not for themselves, but for Moreland, in selling the cattle, or plaintiffs bought knowing that fact, then plaintiffs have no cause of action against defendants, and the instructions given by the court correctly declared the law. Wharton on Agency and Agents, secs. 295-6, 506; 1 Wait's Actions and Defenses, pp. 237-8-9; *Southard v. Sturtevant*, 109 Mass. 390; *Chase v. De Bolt*, 7 Ill. 371; *Warren v.*

*Dickson*, 27 Ill. 115 ; *Robeson v. Chapman*, 6 Ind. 352 ; *Morley v. Attenborough*, 3 Exch. 500 ; *Page v. Cowasjee Eduljee*, L. R. 1 C. P. App. 127, 144 ; *Bagueley v. Hawley*, L. R. 2 C. P. 625. (7) Evidence of custom at the stock-yards, where both parties did business, was proper. 2 Taylor on Evidence, secs. 1168–9–70. But if not proper it was not objected to by plaintiffs in the manner required by law, and its introduction was altogether harmless. Besides, plaintiffs, themselves, introduced evidence upon the matter of custom. (8) This case was originally brought in Wyandotte county, Kansas, and went to the supreme court of that state, where it was decided in favor of the defendants. While the decision is not expressly binding upon this court, we submit that, being rendered in a controversy between the same parties about the same subject-matter, it is entitled to the highest consideration. Besides, the opinion is so sound, and was written by so distinguished a judge, that the decision ought to be regarded as controlling. *Irwin v. Thompson*, 27 Kansas, 643.

Jas. F. Mister, Special Judge.—I. This cause is brought to this court from the Jackson circuit court by writ of error. The petition is as follows : " Said plaintiffs for cause of action against said defendants state : That said plaintiffs are, and on the several dates hereinafter stated were, partners, doing business under the firm name and style of Thompson, Payne & Co. ; on said several dates defendants were, and still are, partners, doing business under the firm name and style of Irwin, Allen & Co. On or about the fifth day of July, 1879, said defendants, partners as aforesaid, sold and delivered to plaintiffs seventeen head of beef cattle, in consideration whereof and that said defendants would warrant the title to said cattle as hereinafter stated said plaintiffs agreed to, and did, then and there, pay to said defendants the sum of five hundred and thirty-six dollars and sixty-one cents, which said sum of money was then and there the

full value of said cattle. At the time of said sale and the payment of said sum of money, defendants had said cattle in their possession ; that in consideration of said purchase and payment of said sum of money as aforesaid, and by reason of all the facts aforesaid, said defendants covenanted and agreed with plaintiffs that the defendants had good title to said cattle, and would, and then and there did, warrant the title thereto to plaintiffs, and that they had good right to sell and deliver the same. For the sum of five hundred and forty dollars therefor paid to plaintiffs, by one William Clark, they, on or about the day and year last aforesaid, sold and delivered said cattle to said Clark. Said cattle were not the property of said defendants, when so sold and delivered to these plaintiffs as aforesaid, or at any other time, but were then the property of John Stock ; afterwards said Stock, by due process of law, recovered said cattle from said Clark, in consequence whereof, these plaintiffs were compelled to, and did, pay said Clark the value of said cattle, the damages recovered of him by said Stock for the detention thereof, together with the costs and expenses of defending the title to said cattle, to-wit, the sum of six hundred and twenty-five dollars; afterwards on the —— day of ——, 18—, plaintiffs demanded of defendants the sum of money last aforesaid, which they then, and ever thereafter, wholly neglected, failed and refused to pay. Wherefore plaintiffs ask judgment for the sum of money last aforesaid and interest thereon from the date of said demand as therein before stated." The answer is a general denial.

At the trial, the evidence, appearing by the record, was in substance thus : *First.* On the fifth of July, 1879, defendants were the consignees of seventeen head of cattle, at the Kansas City stock-yards purporting to be shipped to them by W. H. Moreland, and on that day sold these cattle to plaintiffs at their market value, and subsequently gave them a memorandum account

showing the number of cattle, their weight and price ( which was receipted under the firm name of defendants), together with an order for the delivery of the cattle to the plaintiffs, directed to the Kansas City Stockyard Company, and were paid by plaintiffs five hundred and thirty-six and sixty-one-hundredths dollars, the price of the cattle. *Second.* Within a few days plaintiffs sold and delivered said cattle to one William Clark, at their market value, which said Clark then paid. He held said cattle in Clay county, Missouri, when suit in replevin was brought in the Clay circuit court against said Clark, by one John Stock, to recover possession thereof, he claiming to be the owner. On the institution of said suit, Clark notified plaintiffs, and they notified defendants, and each was respectively requested to defend the same. Said Stock recovered said cattle ; thereupon plaintiffs repaid said Clark his money, interest and cost, and demanded of defendants their money, interest and cost, the defendants refused payment, and this suit was brought. *Third.* There was some evidence to the effect that Moreland appeared at the stockyards, at or near the time of the sale, although this is denied by the plaintiffs ; but it is not claimed that Moreland took any part in the making of the sale or in the delivery of the cattle. *Fourth.* There was also evidence that the cattle were stolen from one John Stock, and that the so-called Moreland was the thief ; and in the proof of ownership by Stock in the replevin suit aganst Clark it appeared that he, Stock, had never given to anyone authority to sell the cattle. It also appeared that said Stock and his wife made inquiry at the stockyards about their lost cattle, and traced them into the possession of Clark, from whom, after identifying them, they recovered them by suit. *Fifth.* It also appears that plaintiffs bought the cattle from defendants intending them for Clark, if they suited Clark, but paid for them with their own money. But Clark afterwards took them at the price paid for them by plaintiffs, with the

addition of the usual charge for commission ; and when he was paid back the money paid by him and the costs incurred in the litigation with Stock, by the plaintiffs, he transferred and set over to them, all his ( Clark's ) right to collect the same from defendants. *Sixth.* There was also evidence to the effect that the defendants paid over to the person calling himself Moreland, by their check, the amount paid them by plaintiffs, less charges for freight, etc., and their commissions ( and it was shown, against the objections of plaintiffs, that it was not customary at that time to make inquiry back of what was shown on the face of the bill of lading, and the person in whose charge the cattle came, as to the right ownership, and that defendants had always dealt with stock as commission merchants).

II.    The instructions asked by plaintiffs, and *refused*, were to the effect that, if defendants were in possession of the property, and sold and delivered it to plaintiffs for its market value, and for the consideration paid delivered the written statement of sale read in evidence, and that the plaintiffs thereafter sold the cattle to Clark at their market value, and that suit was thereafter brought against Clark, and the cattle recovered from him therein by one Stock, on account of his ( Stock's ) superior title thereto, defendants having been previously notified of pendency of Stock's suit, and that after such recovery plaintiffs paid to Clark the purchase price of the cattle and costs of suit, the jury would find for plaintiffs and assess damages at sum paid to Clark, with six per cent. interest.    *Again*, that, even if defendants sold the cattle as agents, and undertook to sell in the name of Moreland, which was not the real and true name of the person from whom the cattle were received, and on whose account sold, then, upon the facts predicated, the finding should be the same.    *Again*, that, even if agency was disclosed during negotiations, the signing of the writing of sale by defendants in their own name made them principals.

The instructions asked for plaintiffs, and *given*, were to the effect that, although defendants did disclose their agency, and did give the name of W. H. Moreland as principal, yet, if defendants made and delivered the statement of sale, and plaintiffs were influenced to make purchase by the known character and standing of defendants, the finding should be for plaintiffs, and for the amount which plaintiffs repaid to Clark, with interest from payment at six per cent. *Again*, that, even if defendants mentioned the name of Moreland during the negotiations as the name of the owner, yet, unless plaintiffs completed the purchase with the knowledge and understanding that the defendants were acting as agents of Moreland, and not on their own account, defendants are liable as principals.

The instructions asked for by defendants, and *given*, against the objections of plaintiffs, were to the effect that, if in making the sale of cattle defendants were the agents of Moreland, and that such agency was known at the time to the plaintiffs, and that they dealt with the defendants as agents, the finding should be for defendants; and that on the question of agency the jury should consider all that occurred at the time of the transfer, and all writing and *memoranda* made at the time bearing on the issue. *Again*, that, while one selling personal property in his possession is presumed in law to warrant the title, yet his possession must be that of the owner, or one who sells the property as his own; and if defendants, when they sold the cattle to plaintiffs, had possession as agents of Moreland, and sold as agents of Moreland, and plaintiffs, with full knowledge that defendants were selling the cattle as agents, bought, the finding should be for defendants. *Again*, that if defendants did not claim the ownership, but sold as agents for another, whose name was disclosed at the time, and it was not the intention of the parties at the time that defendants should bind themselves as owners, but were understood as selling as agents, the

finding must be for defendants, and, in determining this question, the jury should consider all the facts and circumstances of the case.

The jury found for the defendants, and, after the motion for new trial by plaintiffs in due time, which was overruled and denied, which was duly excepted to at the time, a writ of error was sued out in due course of law, and the case is here before this court for review.

*First.* It will be seen from this outline of the pleadings, evidence and instructions, that the issues involved in this controversy are not limited to the inquiry as to whether the defendants sold the cattle in question as principals or as agents, as is substantially done by the instructions *given* in the cause, as well as by those refused, excepting only as to a point of evidence. *Another* and controlling issue is as to the ownership of the property sold, for the cattle seem to have been reclaimed by a third party in a trial in which both plaintiffs and defendants were notified to defend, and it also appears from evidence in the record that these cattle were stolen, and that neither the principal of defendants nor themselves, as agents, had any right to them, nor conveyed any title to plaintiffs. This latter and most important issue was not even submitted to the jury, either by the instructions of the plaintiffs or defendants, and the attention of the very able judge who tried the case was not directed to it. If the cattle were in fact stolen, defendants are liable to plaintiffs, whether they sold as principals or as agents, for, having no title to property which was stolen, they could convey none to plaintiffs; and, having received the money of plaintiffs on the assertion and claim of ownership, whether as principals or as agents makes no difference, when the property was taken from the plaintiffs' vendee by the actual owner, and the purchase money was repaid to their vendee by the plaintiffs, with the costs, then defendants are under obligation to make it good to plaintiffs. *Sprague v. Rosenbaum*, 38 Fed. Rep. 386.

In such event, also, the question as to whether the sale was made by defendants as principals or as agents is of little importance, practically, and the character and effect of the written instrument of sale, or of the "collateral facts," which were shown against the objection of the plaintiffs, are of still less importance.

There are two cases in this state of controlling character and authority, in the determination of the issues which are involved in this controversy, and in which the dissimilarity of the facts is relatively slight. In both of them there was involved a dealing with stolen property; and in one of them the sale of it by a broker or auctioneer; these cases are *Koch v. Branch*, 44 Mo. 542, and *Schell v. Stephens*, 50 Mo. 375. In *Koch v. Branch*, the case was thus: "In February, 1864, the plaintiffs (Koch and others) were engaged in mercantile business at Fort Smith, Arkansas, and purchased of one Hunt, an army beef contractor, a commissary voucher issued to him for fourteen hundred and forty-eight dollars. Soon after its purchase it was stolen from the store, and the thief was never discovered. In February, 1865, one Richard Branch purchased the voucher of a stranger, and forwarded it to his brother (one of the defendants), who collected it of the government and paid over the amount to his brother, charging no commission (he was a partner of the firm of Branch, Crookes & Co., composed of defendants, and made the collection in their name). The suit was by the *owner* of the property against the commission firm for converting the property and being the cause of the plaintiffs' ultimate loss. The court, upon this state of facts, held: "That the voucher was property (or convenient representation of property), and when actually sold passes by delivery like other personal property; but the purchaser can acquire no greater right than that of the seller, and when the property is stolen *there can be no further transfer;* that the agency of defendants in the plaintiff's loss so involved them as to subject

Thompson, Payne & Co. v. Irwin, Allen & Co.

them to liability, since they converted the property into money and paid over the money to their principal without authority ( because he was not the true owner ), and so would be any other voluntary act which changed the character of the property and placed it beyond the reach of the owner; that public policy, as well as private rights, demand that the settled rule that no title can pass through a thief should not be relaxed ; and those who buy it of him should be compelled to give up the property, unless they have converted it, when they should be held for its value ; and that factors and agents should be held to the same accountability, since it is then duly known for whom they act, and whether they can be saved harmless, if their act shall amount to the conversion of another's property." In this case the defendants received no benefit from the transaction, not even charging commissions for their trouble in making collection of the voucher ; but, as they undertook to collect for another who was not the *true* and real ( though ostensible ) owner, and paid over the money to the ostensible owner, they are, notwithstanding, liable to the real owner, as involving him ( though innocently ) in the loss of his property.

In the other case ( *Schell v. Stephens* ), the case was somewhat different and more closely similar to the case under consideration. The defendants were auctioneers, and sold, at auction, a span of horses, wagon and harness, which were bid in by the plaintiff. The property turned out to have been stolen and was reclaimed. Defendants signed their names, with the reputed owner, to the following written instrument :

"KANSAS CITY, June 23, 1868.

"Received of J. W. Schell three hundred ( $300 ) dollars for one bay and one gray horse and one two-horse wagon and harness.

"A. R. LEDFORD,
"STEPHENS & SONS."

The suit was brought by the purchaser, against Stephens & Sons, the auctioneers, upon a warranty of title, based upon the written instrument and also upon an express verbal warranty of title, claimed to have been made by Stephens & Sons. The case was submitted to the court upon conflicting testimony, and the finding was for the plaintiffs. The supreme court, on this record, held : That, if defendants sold the property as owners, the rule is that the seller of a chattel, if in possession, sells it as his own ; warrants by implication that it is his own; that the mere fact the defendants were acting as auctioneers was not, of itself, notice that they were not selling their own goods, and they must be deemed to have been vendors, and responsible as such for title, unless they disclosed at the time the name of the principal ; that, if the receipt and bill of sale is to be treated as the contract between the parties, it is evident that the defendants undertook to sell the property as principals, and that the plaintiffs purchased from them as well as Ledford, although the latter might have been the principal in fact, and parol evidence is not admissible to contradict it and show that they did not sell as principals or intend to hold themselves responsible as such ; that when a sale by an agent is made, and the purchaser, who is deeply interested in the title, and is willing to trust the agent, while the principal is a stranger, takes written evidence of the sale, signed by the agents as principals, they must be held to have assumed the responsibility of principals; and none the less so because their business implies agency ; that as regards the express verbal warranty, if the auctioneer alone was trusted, and he expressly agreed to warrant the title, then the promise is not collateral, and is good though not in writing, and the court affirmed the judgment, which was for the plaintiffs. It will be readily seen that this case is very similar to the one under consideration, except as to the matter of the express verbal warranty. The property in both is stolen property reclaimed by the owner ; the instrument of

sale is very similar in both, except that in the case under consideration the instrument is signed by defendants alone; the defendants in both cases are persons whose business implies agency, but who sign, either with the principal or alone. The action in both cases is of the same character, claiming warranty of title; and in both is against the seller of the property by the purchaser, except in this case it appears it was resold, and the second purchaser repaid by the first purchaser. In the *Schell case* as in this, the trial is based *primarily* on the selling of the property in possession by one who signs a written instrument of sale. But it can hardly be doubted that if there had been no such instrument in either, and the seller had received the consideration and delivered the property, and it turned out that the property so sold was stolen property and was reclaimed by the true owner (even if the proceeds of the stolen property had been paid over to the thief), the seller would be liable to the purchaser, and the judgment must have been the same, and, under the same form of action used in both cases, the *gist* of both being that defendants sold and warranted as owners, *and were not* owners, for in both cases the property was reclaimed and lost to the purchaser. And it may be added that, if the *Schell case* is held for law (and it has not since been questioned), it is also authority for holding defendants liable on the written instrument alone, and under such a view the *refusal* of plaintiffs' first instruction, and the giving of defendants' first and third instructions would have to be held erroneous on the part of the trial court.

*Second.* As the judgment in this case must be reversed because of the considerations hereinbefore stated (*Black River Lumber Co. v. Warner*, 93 Mo. 384), it seems proper to refer to some principles of law which should govern in any future trials.

(1) The law of the sales of personal property and of the liability of agents is well established. The

rule in America is that as to goods in the possession of vendor there is an implied warranty of title. Benjamin on Sales [ Corbin's Ed.] sec. 926, and cases cited ; Story on Sales [ 4 Ed.] sec. 377, and note ; 2 Kent's Comm. [ 12 Ed.] 478 ; *Schell v. Stephens,* 50 Mo. 375 ; *Shattuck v. Green,* 104 Mass. 42, where MORTON, J., says : " If the vendor has either actual or constructive possession, and sells the chattels, and not merely his interest in them, such sale is equivalent to an affirmation of title, and a warranty is implied." *Whitney v. Heywood,* 6 Cush. ( Mass.) 82, where DEWEY, J., says : " Possession here must be taken in the broadest sense, and the excepted cases must be substantially cases of sales of the mere naked interest of persons having no possession, actual or constructive, and in such cases no warranty of title is implied." *Matheny v. Wilson,* 73 Mo. 682, 683. Consignments of cattle to commission men are usually with the authority to sell them as their own. *Sprague v. Rosenbaum,* 38 Fed. Rep. 388. In the case of a broker ( who is, strictly speaking, a mere negotiator between the other parties ) he incurs no personal liability to anyone. But, then, in some cases a broker, though acting as agent for a principal, makes a contract of sale and purchase in his own name. In such case he may be sued by the party with whom he has made the contract for a non-fulfillment of it, as acting in a character beyond that of mere agents. *Hollins v. Fowler,* 7 House of Lords, 757. " And where a party contracts in writing as agent for a non-existing principal, he will be personally bound, * * * nor is evidence admissible to show that a personal liability was not intended." Benjamin on Sales [ Corbin's Ed.] sec. 246, and cases cited. And one who innocently assists a trespasser in effecting a sale of chattels is liable to the true owner, and on this principle an auctioneer whc innocently sells stolen goods is liable. Benjamin on Sales, sec. 623 ; *Hoffman v. Carew,* 2 Wend. ( N. Y.) 285 ; *Knapp v. Hobbs,* 50 N. H. 476 ; Story on Agency,

sec. 312; *Sharp v. Parks*, 48 Ill. 511; *Schell v. Stephens*, 50 Mo. 375; *Koch v. Branch*, 44 Mo. 542. And the mere fact that defendants were acting as auctioneers (or as other agents) is not, of itself, notice that they were not selling their own goods, and they must be deemed to have been vendors, and responsible as such for title, unless they disclosed at the time the name of their principal. *Schell v. Stephens*, 50 Mo. 379; *Thompson v. McCullough*, 31 Mo. 224; *Mills v. Hunt*, 20 Wend. 431; Story on Agency, sec. 257.

And when a sale by an agent is made, and the purchaser, willing to trust the agent, while the principal is a stranger, takes written evidence of the sale signed by the agents as principals, they must be held to have assumed the responsibility of principals; and none the less so because their business implies agency. Persons who hold themselves out as the vendors of the property of others should see to the title of their principals. *Schell v. Stephens*, 50 Mo. 379, 380. Even where an agent discloses the name of his principal, if he signs a written contract in his own name, which does not show upon its face that it was done as the agent of another, he will be personally bound thereby. *Mills v. Hunt*, 20 Wend. (N. Y.) 431; *Smith v. Spaulding*, 13 Mo. 529; *Schell v. Stephens*, 50 Mo. 375. It was held by Judge GRESHAM in *Sprague v. Rosenbaum* (38 Fed. Rep. 388), that a brief instrument in the form of a bill of sale (similar to the one here), delivered by the brokers to the purchaser, although not signed by them, was the written contract of sale; not subject to change or modification by parol testimony; and that they are personally liable to him on their implied warranty of title.

(2) The law of evidence that parol testimony will not be admitted to contradict or vary a written contract is also well established. The rule is based upon the view that the admission of such evidence would tend, in many instances, to substitute a new and different contract for the one which was really agreed

upon, to the prejudice, possibly, of one of the parties; but the writing may be read in the light of surrounding circumstances, in order more perfectly to understand the intent and meaning of the parties; and the terms of it are to be understood in their plain, ordinary and popular sense; unless they have acquired a peculiar sense (as by the known usage of trade); or unless the context points out a peculiar sense as intended. But the rule is applied only to suits between the parties, and cannot affect third persons. 1 Greenl. on Ev., ch. 15, secs. 275–280. And where the agreement in writing is expressed in short and incomplete terms parol evidence is admissible to explain that which is *per se* unintelligible, such explanation *not being inconsistent* with the written terms, and all their contemporaneous writings relating to the same subject-matter are admissible evidence (1 Greenl. Ev., secs. 282–283); or evidence to show that the instrument is void, or that it never had any legal existence or binding force. 1 Greenl. Ev., sec. 284. Nor does the rule apply in cases where the original contract was verbal and entire, and a part only of it was reduced to writing; nor does it prevent the contradicting or explaining the instrument in some of its recitals of facts, where such recitals do not, on other principles, estop the party to deny them. 1 Greenl. Ev., secs. 284–285. And the rule is not infringed by any evidence of known and established usage, respecting the subject to which the contract relates, but, though usage may be admissible to explain what is doubtful, it is not admissible to *contradict* what is plain. 1 Greenl. Ev., sec. 292. So, also, courts of equity admit parol evidence to contradict or vary a writing, where it is *founded on a mistake* of material facts, and it would be unconscientious or unjust to enforce it against either party according to its expressed terms. 1 Greenl. Ev., sec. 296. So, also, a latent ambiguity may be explained. 1 Greenl. Ev., sec. 297, *et seq.* So, also, it may be shown that the written instrument is *totally*

*discharged* or that there was a *new and distinct* agreement upon a new consideration, whether it be a substitute for the old, or an addition to and beyond it. 1 Greenl. Ev., sec. 303. So, also, a receipt when a mere acknowledgment of payment or delivery may be contradicted by oral testimony, but, in so far as it is evidence of a contract between the parties, it stands on the footing of all other contracts in writing, and cannot be contradicted or varied by parol. 1 Greenl. Ev., sec. 305. In also to the same effect, substantially, Wharton's Law of Evidence, ch. 12, sec. 920, and note 2, *et seq.;* 1 Greenl. Ev., secs. 1064–1071. See, also, *Ashley v. Bird,* 1 Mo. 640; *Singleton v. Fore,* 7 Mo. 515; *Peers v. Davis,* 29 Mo. 184; *Bunce v. Beck,* 43 Mo. 266; *Helmick v. Gehrke,* 56 Mo. 79; *Burress v. Blair,* 61 Mo. 149; *Jones v. Shaw,* 67 Mo. 670; *Bowen v. Bowen,* 90 Mo. 189; *State ex rel. v. Hoshaw,* 98 Mo. 360; *Black River Lumber Co. v. Warner,* 93 Mo. 384. It will appear from a review of the Missouri cases (only a few of which are cited above), that the courts of other states have been "far more liberal in permitting parol evidence to be introduced to explain written contracts than this court (supreme court of Missouri) has been," as was said by this court in 98 Mo. 341.

*Third.* It seems to be due to refer in a very general way to the points suggested by the eminent counsel, on either side, in the very satisfactory briefs furnished to this court. But this reference cannot be made in detail nor specifically.

(1) The points of ownership and possession are both asserted and denied. It would seem from the authorities cited in the briefs, as well as those named in this opinion, that defendants stood in the place of owners and in possession of the cattle as to these plaintiffs, and are consequently liable to such obligation and consequences as that relation imposes, since it is not claimed that Moreland took any part in the sale.

(2) The actual sale, as appears from the evidence, was made verbally, and afterwards the written statement of the sale (which was receipted), together with the written delivery order to the Kansas City Stock-yards Company, each of them signed "Irwin, Allen & Co.," were sent or furnished to the plaintiffs by defendants. It also appears that the official weighmaster at the stock-yards delivered a weigh ticket to Irwin and he to Payne, and both this and the delivery order had upon it the words "account of W. H. Moreland," but that the written statement of sale had not the name of Moreland upon it. Neither the weigh ticket or the delivery order are instruments of such a character as to modify or control the written statement of sale, being merely the incidents of the sale and not a part of it; and, apparently, the name of Moreland is used to show the name of the consignor in both and in the case of the delivery order to show to the Stock-yards Company on whose account it was consigned to defendants. It could hardly be claimed that the weigh ticket delivered to Irwin, or the delivery order delivered by Irwin, Allen & Co. to plaintiffs, would have the effect of *superseding* the transaction which had hardly already been consummated, or to make defendants agents instead of principals, unless they were so, *independently* of these papers. If the competency of these papers in evidence were conceded they could have no effect in determining of themselves the fact of agency, but are only circumstances bearing upon the controverted fact, so that the question of agency should be submitted to the jury on proper instructions.

(3) Regarding the question as to whether defendants made the sale in this case as principals or as agents, it is as has been just said a question for the jury under proper instructions, which should present also all the issues involved in this controversy. But the case in 27 Kansas, 643, on the point of "the agency business," is opposed to the decisions in this state which

are supported by Benjamin and Story and the courts of New York, New Hampshire, Illinois and other states, and, also, by the federal courts. *Sprague v. Rosenbaum*, 38 Fed. Rep. 386. And the case in 38 Fed. Rep. 386, is one in which the brokers assumed unqualifiedly the position of principals and owners.

(4) There seems to be no valid objection to the proof of the fact that the defendants were commission merchants; but proof of the fact that their business had been exclusively that of buying and selling stock for other persons on commission was not proper; for *non constat* that they might not have varied in this case, nor was it proper to show that it was not customary to inquire as to the title of those who consigned live stock to them by commission merchants doing business there, as this custom could have no effect towards releasing them from the consequence of their acts, when the rights of others are involved.

The judgment will be reversed, and the cause remanded, with instructions that the proceedings at the trial shall be in conformity with the views herein expressed.

GILL, J., not sitting; SMITH, P. J., concurring; ELLISON, J., dissenting.

ELLISON, J. (*dissenting*)—I am not willing to concur with the majority. The action is based on an implied warranty of title in a sale of cattle claimed to have been made by defendants to plaintiffs. Defendants claim that they made the sale as agents of one Moreland and that their agency was known to plaintiffs. It is conceded that the title failed; Moreland having stolen the cattle from the true owner. Plaintiffs and defendants were what is known as commission merchants, and each knew the other to be such. The sale and manner of sale, as testified to by plaintiff Payne, was that he made the purchase at the stock-pens. That the "sale was made and consummated before the

weigh tickets were made out." That thereupon the cattle were weighed by the weighmaster who made out the following weigh ticket, which was then and there delivered to Payne.

"KANSAS CITY STOCK-YARDS COMPANY.

"I., A. & Co., account of W. H. Moreland, T., P. & Co. 17 cattle, 17,310; taken from block 9, pen 15; yarded in block 9, pen 15.

"BUFFINGTON,

"Weighmaster.

"Date, July 5, 1879."

That the weigh ticket always shows who is buying or selling. That thereupon he, Payne, indorsed on the ticket the following: "Account of Clark $3.10, T., P. & Co.;" that afterwards, after calculating the amount due, defendants sent plaintiffs the following written instruments which were delivered to Payne at the same time.

"KANSAS CITY STOCK YARDS,

"WEST KANSAS CITY, Mo., July 5, 1879.

"M—— T., P. & Co. bought of Irwin, Allen & Co., live-stock commission merchants, 17 cattle, 17,310 at $3.10, $536.61.

"Paid.        IRWIN, ALLEN & Co."

"*Kansas City Stock-yards Company,*

"Deliver to Thompson, Payne & Co., account of 17 cattle. Sold for account of W. H. Moreland, in block —— pen —— scale ——.

"(Signed.)        IRWIN, ALLEN & Co.

"July 5, 1879."

It appeared in testimony of defendant Irwin that he told Payne that he did not own the cattle. On this point, Payne testified that he would not say that Irwin did not point out Moreland as the man who shipped in the cattle. He thought probably Irwin did do so. The foregoing facts are sufficient to show the grounds of my dissent.

It strikes me as clear that the first division of the majority opinion in which the fact that the property was stolen is asserted to be the paramount point in the case, and in which it is stated that the ownership of the property sold is a controlling issue ; and in which it is further stated that the fact of the cattle being stolen rendered defendants liable, even though they acted as agents, is a misconception of the case.   The fact of the cattle being stolen is conceded, and their true ownership was not denied at the trial.   The title failed, or was never conveyed, for the reason that the cattle were stolen.   But plaintiffs would be in equally as good a situation, and would have made out that part of their case just as well, if they had shown the title to have failed by reason of a mortgagee's or other lienor's claim. The question is, has the title failed ?   It is unimportant as to how or why it failed.   If this was an action by the true owner of the cattle for *trover* and *conversion*, then, it might well be said that the defendants were liable "whether they sold as principals òr as agents." *LaFayette County Bank v. Metcalf*, 40 Mo. App. 494. But this is not a suit by the owner ; the foundation of this suit is that plaintiffs are not and did not become the owners by the sale to them.   The petition is based on the alleged fact that defendants sold plaintiffs cattle to which it turned out they had no title.   The suit is, therefore, on the warranty, which is the only action I can conceive of that would lie between vendor and vendee where there is a failure of title.   Plaintiffs' whole case, from end to end, is that defendants sold them cattle to which they had no title, and now they want their purchase money back on the implied warranty of title.   This is, doubtless, the reason that the point now made in the opinion did not occur to the trial judge, and was not suggested by counsel for either side. The only question in the case now, and from the beginning, is this :   Did defendants make the sale as principals or agents ?   Plaintiffs' whole case concedes that,

if the contract of sale was made by defendants as agents, there is no personal liability ; in other words, their principal would be liable on the implied warranty, and not them.    They contend that the instrument signed by defendants, which they term the bill of sale, is the written contract binding defendants as principals, and subject to no change or alteration by parol.  Defendants contend that the instrument is not a written contract of sale; that it is a mere receipt or "bill of parcels," wholly outside the rule as to written contracts.    And in this I think they are right, for it shows upon its face that it is a mere *memorandum*, incomplete, and not capable of being understood without parol evidence.    But, from the facts of this case, I am not driven to the necessity of so considering it.    I think, however, that it is imperative that the contemporaneous writing should be considered with it.    There are three written papers in the case, the "weigh ticket," the "title ticket," or order for delivery, and the "contract of sale" ( as plaintiffs term it and I shall call it).    The weigh ticket was first written and delivered to Payne.  It stated that the cattle were Moreland's.    But this was prior to the contract of sale, and I shall, therefore, in order to keep with plaintiffs as long as possible, not consider it against them.    The contract of sale and the delivery order, however, were executed together and delivered to Payne at the same time, as he himself states.    Being so executed and delivered, and referring to the same transaction, they should then, under a familiar rule of law, be considered as one paper.  *Noel v. Gaines*, 68 Mo. 649 ; *Brownlee v. Arnold*, 60 Mo. 79 ; *Waples v. Jones*, 62 Mo. 440.    So considered, the paper would read as follows :

"KANSAS CITY STOCK YARDS,
"WEST KANSAS CITY, Mo., July 5th, 1879.
"M—— T., P. & Co., bought of Irwin, Allen & Co., live-stock commission merchants, 17 cattle, 17,310 at $3.10, $538.61.
"Paid.

"*Kansas City Stock-yards Company*,

"( Will) Deliver to Thompson, Payne & Co., 17 cattle, sold for account of W. H. Moreland, in block —— pen —— scales ——.

"IRWIN, ALLEN & Co."

Reading in that way, and so it must be read, is it not clear of all doubt that defendants acted as agents for Moreland, and disclosed their agency on the face of the written contract?

The case of *Schell v. Stephens*, 50 Mo. 375, relied upon by plaintiffs and by the majority, wherever applicable, is favorable to defendants. That case, like this, was a suit on the *warranty*, the property being *stolen*. The court there declares the law to be that if one in possession of personal property sells it as his own, at a fair price, there is an implied warranty of title; but that this was not true in case of agents who sell as agents; and that possession of such agents as pawnbrokers, factors, auctioneers, etc., did not imply title but rather suggested title in others. While thus stating the law, the case further holds that, while such is true, yet an agent may contract as principal. That is good, as well as familiar, law. And that case only decides that since the agents there entered into a writing which did not disclose their agency they would be held to have contracted as principals, and the writing could not be altered ( being complete in itself) by inserting matters showing their agency by parol. The court there considers, and the case shows, that the plaintiffs there would not accept of the principal's name alone, but took, in addition thereto, the name of the agents as though they were also principals. The case at bar is altogether different. The written paper here disclosed the agency, and expressly states the sale to be for the principal. In other words, the paper in this case discloses exactly what the court in that case said should have been done by that contract. Much of what is said as to the *Schell case* applies to *Sprague*

*v. Rosenbaum*, 38 Fed. Rep. 386. The writing there was from the agents as principals, and would not have been accepted in any other way ; for when the purchaser was referred by the agent to the principal he replied that he preferred making the purchase from him as he was acquainted with him. The court found, as it well might, that the dealing was with the agent as principal, and on his faith and credit.

It is well enough to state that this matter had been in litigation a great length of time. Plaintiffs instituted suit in Kansas. The cause was appealed to the supreme court of that state, and is found reported in 27 Kansas, 643. In an opinion by Judge BREWER the case was decided against plaintiffs, he stating that the defendants should have had the verdict. On reversal the plaintiffs dismissed and have reinstituted the present proceeding in this state, where it has lingered till now.