S. F. TRUNDLE, Respondent, v. THE PROVIDENCE-WASHINGTON INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, May 1, 1893.

1 **Practice, Trial**: PARTICIPATION IN SECOND TRIAL: FORMER APPEAL. When a party participates in a new trial awarded, he cannot afterward be heard to complain of errors committed in the first trial; and so after an appeal has been taken from an order sustaining a motion for a new trial and setting aside a finding for the appellant, if he participates in the second trial, he waives his appeal, though it is error to order a further trial until the appeal was disposed of.

2. **Insurance**: DELIVERY OF POLICY ON CONDITION: EVIDENCE. On the evidence in this case it is not perceived that the policy in suit was delivered on condition as claimed by defendant.

3. ———: PAYMENT OF PREMIUM: EVIDENCE. Though defendant's agent, in transmitting the policy in suit, notified plaintiff that there would be a small difference in the premium of this policy and the one for which it was substituted, yet, as he made no demand for its remission, plaintiff was justified in believing that there was no occasion for promptness in remitting, and the failure to remit did not vitiate the policy; though there had been a request to remit, a failure to comply would have avoided the policy.

4. ———: CANCELLATION: NOTICE: PRINCIPAL AND AGENT. Plaintiff took out a policy in L. Co. which afterwards ordered its agent to cancel said policy. The agent wrote plaintiff's husband, who had secured the policy and was in charge as manager for his wife, of the goods insured, of the cancellation and inclosed defendant's policy in lieu of the canceled policy. The husband accepted the substituted policy. *Held,* the plaintiff's husband was her general agent as to her mercantile business and giving such notice to him was sufficient.

5. ———: OWNER: EVIDENCE. The evidence in this case shows plaintiff was sole owner of the insured property.

6. ———: MORTGAGE: NOTICE: AGENT OF TWO: ESTOPPEL: DEFENSE. An agent of L. Co. issued plaintiff a policy in said company, knowing there was a mortgage on the insured property. This policy was soon canceled, and the same agent being also agent of defendant company issued its policy in lieu of the canceled policy. *Held,* that the facts of the case give rise to the inference that the knowledge of the mortgage obtained in the first transaction was present in the mind of the agent in the second one, and his knowledge is the knowledge of the defendant; and the defendant is estopped from setting up the want of indorsement of the incumbrance on the policy as a defense.

7. **Proofs of Loss:** WAIVER. In this case there is some evidence of the adjuster's denial of the liability, and it is sufficient to constitute a waiver.

8: **Practice, Trial and Appellate:** TRIAL BY COURT: CONFLICT OF INSTRUCTIONS. Where the trial is before the court without the aid of a jury, though the declarations of law cannot be harmonized in every particular, the judgment will not be reversed if the theory upon which the finding is made is justified by the evidence and is correct as a proposition of law.

*Appeal from the Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*Fyke & Hamilton*, for appellant.

(1) The evidence clearly shows that the policy was delivered upon condition that the Lancashire policy be surrendered, which was never done. (2) The evidence clearly shows that the premium for the policy had never been paid, nor was credit given therefor. *Union Bld'g Ass'n v. Ins. Co.*, 49 N. W. Rep. 1032. (3) The evidence clearly shows that the Lancashire policy was in full force at the time of the fire. No notice had been given to Mrs. Trundle of the company's desire to cancel, and notice to Mr. Trundle, although he was authorized generally to procure insurance for her, was no notice to her. There is no evidence to show that the Lancashire policy could be canceled without plaintiff's consent. *Rothschild v. Ins. Co.*, 74 Mo. 41; *Stockton v. Ins. Co.*, 33 La. Ann. 577; *Latoix v. Ins. Co.*, 27 Va. 113; *Zimmerman v. Ins. Co.*, 42 N. W. Rep. 462; *Body v. Ins. Co.*, 63 Wis. 157. (4) If the Lancashire policy was in force, there would be other insurance on the property, which is prohibited by the policy sued on. *Rothschild v. Ins. Co., supra.* (5) The evidence shows that the plaintiff was not the sole owner of the property, so that under the conditions of

the policy it never attached. *Mers v. Ins. Co.*, 68 Mo. 127; *Reuhmuller v. Ins. Co.*, 20 Mo. App. 246. (6) Notice to Davis of the incumbrance at the time the Lancashire policy was transferred was not notice to him as agent for defendant that the mortgage was still in existence on February 24th. Besides, it appears that the fact that a mortgage existed was not indorsed on the policy, but was concealed from the company for fear it would not carry the insurance. *Fitchburg Savings Bank v. Ins. Co.*, 125 Mass. 431; *German-American Bank v. Ins. Co.*, 8 Mo. App. 401; *Fletcher v. Ins. Co.*, 117 U. S. 519. (7) No proofs of loss were made. Proofs of loss are a condition precedent to plaintiff's right to recover. *Leigh v. Ins. Co.*, 37 Mo. App. 542; *Sheehan v. Ins. Co.*, 53 Mo. 351.

*Stone, Hoss & King*, for respondent.

(1) Even though it was a condition of the policy that the insurance should not commence until all the premium was actually paid, this condition would be waived by the company signing and delivering the policy. *Thompson v. Ins. Co.*, 52 Mo. 469; *Baldwin v. Ins. Co.*, 56 Mo. 151. (2) When defendant's policy was received by Trundle he is conclusively deemed to have accepted it unless he at once returned it to the agent. The contract of insurance then being complete on the part of the defendant, and the policy having been accepted by plaintiff, her rights and defendant's liability become at once fixed, and the Lancashire policy ceased to exist, and upon its ceasing to exist the defendant's policy was the only insurance on the goods. *Keim v. Ins. Co.*, 42 Mo. 38. (3) The testimony does not warrant the assertion of defendant that the plaintiff was not the sole owner of the goods. (4) The testimony shows conclusively that the incumbrance on the

goods was known to the defendant's agent. And knowledge on the, part of the agent estops defendant from insisting on a written indorsement on the policy. The law imputes to the principal and charges him with all knowledge relating to the subject-matter of the agency which the agent acquires while acting as such agent and within the scope of his authority. *Pilkington v. Ins. Co.*, 55 Mo. 172; *Franklin v. Ins. Co.*, 42 Mo. 459; Mechem on Agency, secs. 720–721. (5) Proofs of loss was waived by defendant. *Summers v. Ins. Co.*, 45 Mo App. 46. (6) The letter of the agent Davis to Trundle contains an admission on his part that he holds the $8.90 unearned premium paid on the Lancashire policy, as agent for this defendant, and this agreement upon his part is binding on the defendant. *Ins. Co. v. Miner*, 44 N. W. Rep. 97. (7) The defendant, under the testimony, is clearly liable, and the fact that the plaintiff still retains the Lancashire policy, and brought suit upon it, cannot be held to prejudice her right in recovering from this defendant. *Dibble v. ———*, 37 N. W. Rep. 704; *Bennett v. Ins. Co.*, 31 N. W. Rep. 948; 7 American & English Encyclopedia of Law, p. 1014. (8) The able and exhaustive opinion in 41 Mo. App. 53 *(Huggins Candy & Cracker Co. v. Ins. Co.)* is clear authority as to defendant's liability. (9) An agent is bound to insure the goods of his principal if it is the usage to have such goods insured. *Shirtlift v. Whitfield*, 3 Am. Dec. 701; Mechem on Agency, secs. 493, 510; Paley on Agency, p. 51.

SMITH, P. J.—This is an action on a policy of insurance. It appears that at the November term, 1891, of the court the cause was tried, which resulted in a verdict and judgment for defendant. The plaintiff thereupon filed a motion for a new trial, which went over to the next term, when it was sustained. The

defendant thereupon perfected an appeal to this court from the order granting the new trial.

At the last named term, after the appeal had been taken, the cause was called for trial, and, against the objections of the defendant that no further trial of the cause could be had until the defendant's appeal was disposed of, the court ordered the trial to proceed, which resulted in a judgment for plaintiff. It may be as well remarked here that the defendant also appealed here from the judgment which was rendered against it in the second trial. These two appeals are both before us and are so intimately blended and connected in the records, proceedings and briefs therein that one cannot well be considered independent of the other, so that we shall consider them together, and as practically but one appeal.

It appears by the record of the cause before us that, after the new trial was granted on the motion of the plaintiff, the defendant participated in the second trial of the cause. It introduced evidence to maintain the issue in its behalf and also requested the giving of instructions and generally appeared in the case. The law has been well settled in this state that when a party under such circumstances participates in the new trial awarded, he cannot afterwards be heard to complain of errors committed in the first trial. *Bank v. Armstrong,* 92 Mo. 265; *Hill v. Wilkins,* 4 Mo. 87; *Davis v. Davis,* 8 Mo. 56; *Martin v. Henley,* 13 Mo. 312; *Bowie v. Kansas City,* 51 Mo. 459; *Gilstrap v. Felts,* 50 Mo. 431. There is nothing in the act of 1891, (Session Acts, 1891, p. 70), which changes this rule. The defendant had under that act the right to take its appeal from the order granting the new trial, and had it not participated in the retrial the effect of that appeal would have necessarily been to suspend further proceedings in the case until the appeal was disposed of. It was pri-

marily error for the trial court to order a further trial of the cause until the appeal was disposed of, but that error was cured by the act of the defendant in participating in the new trial. Defendant could have stood on its appeal, refused to participate in the new trial awarded and thus arrested any further proceeding in the case until its appeal was heard and disposed of; but, instead of taking that course, it elected to participate in the new trial, and having done so it cannot now be heard to complain of the errors, if any, which occurred during the first trial. The defendant by its own motion killed and rendered inefficacious its appeal from the order granting the new trial.

This brings us to the consideration of the grounds of the appeal from the judgment which was recovered against it at the second trial. The defendant contends that the trial court erred in overruling the demurrer interposed by it to the evidence adduced by the plaintiff. The first specific ground of this contention is that the evidence shows that the policy sued on was delivered upon condition that the Lancashire policy be surrendered, which was not done.

It appears from the evidence that a policy for the same amount as the policy sued on had been issued by the Lancashire company to plaintiff covering the plaintiff's merchandise, and that during the life of this policy its agent at Nevada wrote the plaintiff's husband, who it seems was managing her mercantile business, to return the policy, as that company refused to carry the risk, and also inclosed a policy in defendant's company for a like amount in lieu of the Lancashire policy. It appeared by the register kept by the agent of the Lancashire company that the policy held by plaintiff had been canceled the day before the letter was written to plaintiff's husband notifying him of the fact and

inclosing the policy sued on. It is not perceived that the defendant's policy was delivered to plaintiff's husband upon the condition for which defendant contends.

The next ground urged is that the evidence shows that the premium for the policy has never been paid nor has credit been given therefor, and that the policy is invalid for that reason. The annual premium for the policy sent by defendant's agent to plaintiff was $10. The letter inclosing the policy informed plaintiff that "there would be a small difference of $1.10, owing to the additional time this one has to run, it being one year from now," while the one in whose stead it was issued began to run January 15 preceding. The agent of the Lancashire company was also agent of defendant company, and so when he canceled the policy of plaintiff in the former company and issued one in its place in the latter he gave plaintiff credit on the new policy for the amount of unearned premium on the old one. The defendant's agent in his letter sending the policy did not so much as request a remittance of the $1.10 difference, but contented himself with giving information alone of the difference. The policy is not set out in the record and we cannot tell how essential to its operative effect the payment of the premium is made. We think the language employed by the defendant's agent in his letter transmitting the policy to plaintiff justified plaintiff in believing that there was no occasion for great promptness in remitting the small unpaid amount on the new policy, and that he could do so within a reasonable time. It was not a cash transaction. It was on credit to the extent of the small balance. Undoubtedly it was not in the mind of defendant's agent that the plaintiff would by return post remit that balance. Nothing of the kind was contemplated or intended.

If, as is not the case, the policy had been sent to plaintiff with the request to remit the balance of the unpaid premium thereon, then the rule declared in *Building Ass'n v. Ins. Co.* (supreme court of Iowa, 49 N. W. Rep. 1033) would be fairly applicable.

The defendant further contends that there is no evidence tending to show that the Lancashire policy could be canceled without the plaintiff's consent. Of course if this policy was still in force at the time of the fire, then that of the defendant, which plaintiff insists was accepted in lieu of the former, could not have been operative, since only one of these policies was then valid. It sufficiently appears that the plaintiff's husband was her general agent to transact all her mercantile business. He was the *alter ego* of the plaintiff as to that particular business, and as such by the nature of his relation to her and the business, the transaction of which he was intrusted, he must be held as the general agent of the plaintiff (Mechem on Agency, secs. 6, 7, 285, 493, 510), and presumed to possess those powers which are commensurate with his employment, and which are usually and properly exercised by other similar agents under like circumstances.

It would not do to say that a husband conducting a mercantile establishment for and in the name of the wife would not be implicitly authorized not only to insure the merchandise under his management, but to determine in what company or companies the risk should be placed. The power to receive notice of cancellation of an existing policy and to accept a new policy in another company in its place is necessarily implied. These powers are necessarily implied in the general agent. A case of this kind is distinguishable from one where an agent is simply authorized to procure for his principal insurance. Such an agency is special and does not include author-

ity to cancel the insurance so effected. The cases cited by defendant demonstrate this. *Rothschild v. Ins. Co.*, 74 Mo. 41. The deduction to be made from the evidence is that the husband of the plaintiff to whom the notice of cancellation of the Lancashire policy was given was the general agent of the wife in respect to her mercantile business, and, therefore, the giving such notice to him was sufficient.

We do not agree with defendant that the evidence fails to show that the plaintiff was not the sole owner of the property covered by the policy. It does not appear that the plaintiff's husband had contributed a single dollar of capital or credit to the business which he was managing for and in her name.

The defendant further insists that there was a mortgage on the merchandise of plaintiff at the time the policy was issued which was not indorsed on the policy, and of which defendant had no notice, and that this rendered the policy void. The undisputed evidence shows that Davis, who was the agent of the Lancashire company, was notified of the existence of the mortgage at the time he issued the policy to plaintiff in that company. Davis was also the agent of defendant, who issued the policy in suit. The knowledge of the existence of the mortgage obtained by Davis while agent of the Lancashire company was acquired under such conditions as necessarily gives rise to the inference that such knowledge remained fixed, and was present in his memory when subsequently acting as the agent of the defendant in the transaction of the issue of the policy in the defendant company to plaintiff, and that his knowledge must be deemed the knowledge of the defendant. *George v. Railroad*, 40 Mo. App. 446; *Chouteau v. Allen*, 70 Mo. 341; Wade on Notice, sec. 688.

Although it was provided in the policy that if there was any incumbrance on the property that it should be reported by the assured and indorsed on the policy, otherwise the policy would be void, yet if there was an incumbrance on the plaintiff's merchandise of which defendant's agent had notice at the time of the issue of the policy, the defendant is estopped from setting up the want of indorsement of the incumbrance on the policy as a defense. *Pelkington v. Ins. Co.*, 55 Mo. 172; *Franklin v. Ins. Co.* 42 Mo. 459.

There is no evidence that the plaintiff or her husband was present when a conversation took place between Davis while acting as agent for the Lancashire company and the holder of the mortgage on the plaintiff's merchandise; so that the plaintiff is in no way bound by anything that was then said or done. There is no evidence whatever that the plaintiff and the agent of the Lancashire company agreed to conceal the knowledge of the mortgage from the company. As to the defendant's further contention that there was no evidence that any proofs of loss were made, it is sufficient to say that there was some evidence adduced which tended to show that the defendant's adjuster denied to the plaintiff the defendant's liability on its policy. We think there was sufficient evidence of waiver to support the finding of the court. *Summers v. Ins. Co.*, 45 Mo. App. 46; *La Force v. Ins. Co.*, 43 Mo. App. 518.

The defendant finally contends that the finding of the court for plaintiff was at variance with the theory of the following declaration of law given by it at the request of the defendant: "The court finds that it is provided in and by the terms of the policy sued on that if the property described in the policy had a mortgage thereon at the time said policy was issued, it should be so represented to the company and expressed

in writing, otherwise the policy should be void. The court declares that said condition is a reasonable and valid condition, and finds from the evidence that at the time the policy was issued the property described therein was covered by a chattel mortgage and such fact was not represented to the defendant or expressed in the policy in writing, and such policy is void.''

The court at the instance of the plaintiff declared the law to be, that if there existed, at the time of the issuance of the policy sued on, a chattel mortgage against the property insured, and that the defendant's agent, Davis, knew of such incumbrance at the time, and issued the policy with such knowledge, then his action in that respect is binding upon the defendant, and said agent's neglect or omission to state such fact in writing in the policy is no defense in this action, the defendant being bound by the knowledge of said agent in that respect.

This last instruction in view of the authorities already cited stated the rule of law correctly as applicable to the facts of the case. The defendant's declaration of law when read in connection with that given for plaintiff it seems to us was well enough. If the court found the state of facts assumed in that of defendant it would necessarily have found for the defendant, but if on the other hand it found the facts embraced in that of the plaintiff, then, of course the finding would have been for plaintiff. The court could adopt the theory of either declarations accordingly as the evidence warranted. The trial was by the court without the aid of a jury, and as the evidence justified the finding of the court the apparent or supposed want of harmony in the foregoing declarations of law is unimportant. The theory upon which the court found for plaintiff as appears by its declarations of law was unexceptionable. In such case we will not reverse a judgment because all

the court's declarations of law cannot be harmonized in every particular.· If the theory upon which the finding is made is justified by the evidence and is correct as a proposition of law, that is all that is required to uphold the judgment.

It follows that the judgment in both appeals will be affirmed. All concur.