Ess v. Griffith.

Ess, *Administrator, Appellant,* v. GRIFFITH *et al.,*
*Appellants.*

Division One, March 26, 1895.

1. **Practice:** NEW TRIAL: APPEAL. One who, without appealing from an order granting a new trial, participates in the retrial, waives his right to have the order reviewed on appeal from the final judgment.

2. **Mortgage:** INVALID FORECLOSURE: ASSIGNMENT. An invalid foreclosure sale of property under a power contained in a mortgage does not necessarily operate to discharge it; it may be, and frequently is, given the effect in equity of an assignment to the purchaser for his protection.

3. **Conversion:** PARTIES. In an action for conversion, the purchaser of the property as agent, and his principal who received the property, are properly joined as defendants.

4. **Practice:** EVIDENCE: DEPOSITION. Where the testimony of a witness on a former trial, contained in the stenographer's report was read in evidence at the second trial, the witness residing in another state, it was error to exclude a deposition of such witness, laying the foundation for impeaching testimony, taken prior to the second trial in the presence of the opposing counsel and concerning facts which had come to the knowledge of the party taking the deposition after the former trial.

*Appeal from Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED AND REMANDED.

*Leon Block* for plaintiff, appellant.

(1) Appellant is entitled to have the action of the trial court reviewed in granting defendants a new trial and in setting aside the first verdict upon the appeal

taken from the final judgment in the case. Laws, 1891, p. 70. The statute is a remedial one; is intended for the correction of defects in the former procedure. Sutherland on Statutory Construction, sec. 437. (2) All the defendants are guilty of the conversion of these goods. Griffith sold them to the type foundry, and the type foundry was represented in the matter by its general manager, the defendant Pierce, and the type foundry resold the goods. *Koch v. Branch*, 44 Mo. 542; Mechem on Agency, end of sec. 573, p. 405, and authorities cited. The element of intentional wrongdoing is not necessary to the maintenance of the action of conversion. Purchasing and disposing of timber (supposed to belong to the vendor) constitutes conversion. *Waverly Timber & Iron Co. v. St. Louis Cooperage Co.*, 112 Mo. 383. All the defendants are jointly liable. *Smith v. Briggs*, 64 Wis. 497. (3) The acts of Fowler and Montgomery at the time of the attempted sale on February 9, 1889, neither extinguished nor merged, nor in any way impaired the original mortgage from Clark to Fowler, and the same remained a valid, subsisting, "live" mortgage. *Hanford v. Obrecht*, 49 Ill. 146; *Jefferson v. Barkto*, 1 Bradw. (Ill.) 568; *Crosley v. Chase*, 17 Me. 371; Jones on Chattel Mortgages, sec. 811; *Walker v. Stone*, 20 Md. 195; Jones on Mortgages, secs. 812, 1902, 1920; *Jordon v. Furlong*, 19 O. S. 89; *Bailey v. Myrick*, 50 Me. 171; *Ohnsburg v. Turner*, 13 Mo. App. 533 (affirmed 87 Mo. 127); *Brobst v. Brock*, 10 Wallace (U. S.) 519; *Christy v. Scott*, 31 Mo. App. 331; *Collins v. Stocking*, 98 Mo. 290. (4) The defendant Pierce, either as agent of the corporation or for himself, was not a competent witness, Mr. Fowler being dead. R. S. 1889, sec. 8918; *Messimer v. McCray*, 113 Mo. 382; *Leech v. McFadden*, 110 Mo. 584; *Williams v. Edwards*, 94 Mo. 447; *Nichols v. Jones*, 32 Mo. App. 657; *Meier*

*v. Thieman*, 90 Mo. 433; Greenleaf on Evidence, secs. 394, 397, 398 and 417. (5) The burden of proof is upon the junior creditor who wishes to restrict the paramount creditor to a particular fund to show that it affords a sure and adequate means of payment. *Evertson v. Booth*, 19 Johnson (N. Y.) 486; *Woolcocks v. Hart*, 1 Paige (N. Y.) 185; *Callaway v. Bank*, 54 Ga. 572; *Wolf v. Smith*, 36 Iowa, 454; *Holditch v. Mist*, 1 Peere Williams, 695. Subrogation is their remedy. Bispham's Equity, sec. 341; *Woolcocks v. Hart*, 1 Paige (N. Y.) 185; *Evertson v. Booth*, 19 Johnson (N. Y.) 496; 14 Am. & Eng. Encyclopedia of Law, page 693; *Neff's Appeal*, 9 W. and S. (Penn.) 36; *Denham v. Williams*, 39 Georgia, 312; *Walker v. Covar*, 2 S. C. 16. (6) "A court of equity never compels a party having a prior lien upon two funds to resort to only one in other, unless it appears that the one which is not affected by the junior lien is fully adequate to the satisfaction of the prior lien, and that the remedy for reaching it is prompt and efficient." *Briggs v. Planters' Bank*, Freeman's Chancery Reports (Miss. 574, at page 584), citing Story's Equity; and *Walker v. Covar*, 2 S. C. 16.

*Elijah Robinson* for defendants, appellants.

(1) The trial court having sustained a motion for a new trial, the presumptions are all in favor of the correctness of its rulings. And, if the motion might have been sustained on any of the grounds set forth therein, the action of the trial court will not be disturbed. *Lovell v. Davis*, 52 Mo. App. 342; *State ex rel. v. Adams*, 84 Mo. 310; *Iron Mountain Bank v. Armstrong*, 92 Mo. 265; *Hewitt v. Steele*, 118 Mo. 463. (2) There is no question but that the new trial should have been granted on the fourth, fifth, sixth, seventh

and ninth grounds assigned. The court should on the trial of the case have sustained the demurrers to the evidence. (3) Fowler having sold the property under the power contained in the Clark mortgage, for the purpose of shutting out Reber's interest and foreclosing his equity of redemption, and having placed Montgomery in possession of the property under and in pursuance of his purchase at said sale, could not subsequently, nor can his administrator, dispute the validity of said sale. *Oliver v. Howard*, 11 Mo. 425; *McLaughlin v. McLaughlin*, 16 Mo. 242; *Brown v. Findley*, 18 Mo. 375; *George v. Williamson*, 26 Mo. 190; *Merry v. Fremon*, 44 Mo. 518; *Hall v. Callahan*, 65 Mo. 316. (4) The court committed error in excluding the deposition of Montgomery taken on January 10, 1893, and the evidence to impeach Montgomery by showing contradictory statements.

MACFARLANE, J.—Plaintiff, as administrator of Charles T. Fowler, sued defendants Griffith, The Great Western Type Foundry and S. A. Pierce for the conversion of certain printing presses, type, etc., claimed as the property of plaintiff's intestate. There were three trials. The first resulted in a verdict for defendants and a new trial was granted. The second resulted in a verdict for plaintiff for $3,383. On motion of defendants this verdict was set aside and a new trial granted. To this action of the court plaintiff excepted, and filed a bill of exceptions, but took no appeal. On a third trial, in which plaintiff participated, he obtained a judgment for $598, and both plaintiff and defendants appealed. In this appeal plaintiff seeks to have the action of the circuit court in granting a new trial reviewed, and a judgment entered on his verdict on the second trial.

Plaintiff's intestate held a mortgage on the prop-. erty in question, to secure an indebtedness then amounting to about $3,000. The mortgage was made by one Clark, and was dated in 1885, and was over due. It contained a power of sale. In January, 1889, the property belonged to one Reber, subject to the mortgage. On January 23, 1889, Fowler made this contract with one W. J. A. Montgomery:

"It is hereby contracted and agreed between Chas. T. Fowler and W. J. A. Montgomery as follows: Upon the refusual of J. S. Reber to pay said Fowler $500, said Fowler is to sell to said Montgomery his interest and claim in the Junction Steam Printing House, with accrued interest, amounting to $3,000. Said Montgomery is to pay $500 in sixty days, and the remainder in sums of $500 at intervals of six months thereafter until all of said purchase price is paid; all of these notes to be secured by chattel mortgage on said printing material and to bear interest at ten per cent. per annum. In witness whereof we have set our hands this twenty-third day of January, 1889."

Fowler at once took possession under the mortgage and advertised the property for sale. On the twenty-sixth day of January, 1889, Montgomery executed and delivered to defendant Griffith a mortgage with power of sale on the same property to secure a note for $1,050. This mortgage was not recorded until April 6, 1889. The sale was made February 9, 1889. It was understood that the bidding should be free and if the property was bought by Montgomery he should have it on the terms agreed upon in the con-: tract. The sale was public and the property was knocked off to Montgomery at his bid of $2,000.

These two contracts, each signed by Fowler and Montgomery, were read in evidence:

"KANSAS CITY, Mo., February 9, 1889.

"This article of agreement witnesseth: That this day W. J. A. Montgomery has purchased of Chas. T. Fowler his investment and interest in the Junction Steam Printing House for $3,000, together with a certain farm in Macon county, Missouri, and six lots in east Kansas City, Missouri, which said Fowler holds as collateral security.

"The said Montgomery is to pay $500 in sixty days, and the remainder in sums of $500 every six months thereafter, as evidenced by his promissory notes of even date herewith. And the said Montgomery hereby assumes, indorses and reassigns the mortgage given by Geo. H. Clark, which remains unsatisfied and unreleased, as security for the payment of said Fowler's investment, and the purchase price of said printing material. It is further agreed that, upon the payment of the above $3,000, then a complete conveyance shall be made of said printing material and to said lands. But if at the expiration of sixty days the first payment of $500 is not made, then the whole of the $3,000 shall become due and payable, and said Fowler may take possession of said printing material and dispose of it as he may deem best.

"CHAS. T. FOWLER,
"W. J. A. MONTGOMERY."

"KANSAS CITY, Mo., February 9, 1889..

"In consideration that W. J. A. Montgomery move the Junction Steam Printing House, to the Milwaukee building, put it in good condition and running order, Chas. T. Fowler grants possession and guarantees against all claims excepting those specified in the mortgage and the conditions of contract entered into between W. J. A. Montgomery and Chas. T. Fowler, of even date herewith.

"W. J. A. MONTGOMERY.
"CHAS. T. FOWLER."

The Clark mortgage when read in evidence had these indorsements on it:

"February 9, 1889.

"For value received I hereby assign this mortgage to W. J. A. Montgomery.    CHAS. T. FOWLER.

"February 9, 1889.

"For value received I hereby reassign and indorse this mortgage and note to Chas. T. Fowler.

"W. J. A. MONTGOMERY."

There was some dispute about the correct date of these contracts and assignments.

After this sale, possession of the property was given to Montgomery, who removed it to another building in Kansas City and made the ordinary use of it. On April 9, 1889, Montgomery made a mortgage on the property to secure a debt of one E. H. Wittee, which was recorded April 10, 1889, and contained a power of sale. This mortgage was subsequently assigned to Griffith.

Under the powers contained in his own and the Wittee mortgages, Griffith sold the property to defendant Pierce, who was the agent and acted for the defendant, the type foundry, which disposed of it in its usual course of business.

The court gave this instruction in lieu of one asked by plaintiff:

"The court instructs the jury that if you believe from the evidence that C. T. Fowler was the owner of the note and mortgage from Geo. H. Clark (as read in evidence) that said Fowler offered the property mentioned in said mortgage for sale under said mortgage; that the only bidder at said sale under said mortgage was W. J. A. Montgomery, that he did not pay the amount bid by him and that by agreement between Fowler and Montgomery said Fowler assigned said note and mortgage to said Montgomery, who assumed,

indorsed and reassigned the same to said Fowler in order to keep the same alive for said Fowler's security and that said Fowler thereupon gave possession to said Montgomery, that thereafter the defendant Griffith claimed said property and took possession of the same and sold the same absolutely to the defendant the Great Western Type Foundry and that defendant. Pierce was secretary, treasurer and manager of said type foundry and had said printing outfit hauled away to the place of business of said type foundry; that C. T. Fowler is dead, that Henry N. Ess is his administrator, then you will find for plaintiff against all the defendants. But if on the other hand you should believe from the evidence, that the sale of the property by Fowler was for the purpose of foreclosing the equity of said Clark or his grantee in said property and at said sale Montgomery bought the property absolutely and it was not agreed and was not the intention of Fowler and Montgomery to keep alive the Clark mortgage for the security of Fowler's indebtedness by assigning and reassigning the said notes and mortgage then you will find for defendants, or if you believe that Fowler knowingly permitted Montgomery after taking possession of said property under the sale to use and trade with it as his own and hold himself out as the absolute owner thereof then you will find for the defendants.''

At the request of defendants the court gave, with amendments by the words in italics, the following instruction:

''If the jury believe from the evidence in the case that the public sale of the property in question by Fowler under the mortgage executed by Clark to him was made for the purpose of shutting out the interests of said Clark, or Reber, the party claiming under Clark; and if the jury believe from the evidence in the case that at the said sale the property was purchased by the

witness Montgomery, and that in pursuance of said sale Montgomery was placed in possession of said property, and from that time until the same was attached by the sheriff he remained in possession thereof, and by and with the knowledge and consent of said Fowler, and held himself out to the world as the *absolute* owner of said property *under said sale;* and if the jury further believe from the evidence in the cause that the defendants had knowledge of these facts and relied upon them in purchasing the property in question, and that the defendants, or either of them, paid a valuable consideration for said property, then plaintiff is not entitled to recover in this case, notwithstanding there may have been a private arrangement between Fowler and Montgomery by which they undertook to keep alive the lien of the Clark mortgage."

I. The first question that demands our consideration is whether, on this appeal, we can review the decision of the trial court in setting aside the verdict obtained by plaintiff on the second trial and granting a new trial of the cause. The right to such review is claimed under the act of 1891, which is as follows:

"Any party to a suit, aggrieved by any judgment of any circuit court in any civil cause from which an appeal is not prohibited by the constitution, may take his appeal to the court having appellate jurisdiction from any order granting a new trial, or in arrest of judgment, or dissolving an injunction, or from any interlocutory judgment in actions of partition which determine the rights of the parties, or from any final judgment in the case, or from any special order after final judgment in the cause; but a failure to appeal from any action or decision of the court before final judgment, shall not prejudice the right of the party so failing to have the action of the trial court reviewed on

an appeal taken from the final judgment in the case.'' Sess. Acts, 1891, p. 70, sec. 2246.

Prior to this act an appeal could only be taken from a final judgment, but, on such appeal, the appellant had the right to a review of the action of the trial court in setting aside a verdict obtained on a previous trial, and granting a new trial, provided he did not waive the right by participating in the retrial. *Bank v. Armstrong*, 92 Mo. 277, and cases cited.

A different rule would permit a party to contest the retrial and after a second verdict, if in his favor, would give him the right to select the one most favorable to himself, and if he failed in securing that on appeal, to accept the other, ''a species of gambling,'' says Judge TOMPKINS, ''not allowed in a court of justice.'' *Davis v. Davis*, 8 Mo. 58.

Did the legislature intend, by the act in question, to change the rule and grant to the party rights so unreasonable and unjust? Plaintiff contends that such is the plain and unambiguous reading of the statute, and it admits of no other interpretation. The primary purpose of the act in respect to the rights of parties against whom new trials have been granted, was to give an appeal directly from the order, and thus suspend further proceedings in the trial court until the correctness of its action had been determined. If the order granting a new trial is sustained, then both parties will be at liberty to engage in the second trial without waiving any rights. If the trial court is not sustained, then the judgment can be entered on the original verdict and the expenses and delay of a new trial be obviated. Now it does not seem reasonable that the legislature could have intended, by the last clause of the act, to defeat the salutary purposes of the act itself. Yet, if the last clause is given the interpretation contended for, such will be the consequence.

The law will stand precisely as it did before, in case a party elects to postpone an appeal until final judgment, except that the right to engage in the species of gambling, condemned by Judge TOMPKINS, is secured to him.

The act gives the right of appeal directly from any order granting a new trial; from an order arresting the judgment; from an order dissolving an injunction; and from an interlocutory judgment which determines the rights of the parties in actions for partition. The last clause of the act reads: "But a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case."

Prior to the amendment, the actions and decisions mentioned therein, could all be reviewed on appeal from final judgment. The amendment gave a direct appeal which was the primary purpose of the amendatory act. In some cases an immediate appeal may not be desirable or necessary. It may involve unnecessary delay or expense. This might often be the case in partition cases. Now the last clause of the act, quoted above, gives to a party an election either to take an appeal directly from the adverse order or to wait and have it reviewed upon an appeal from the final order. Its purpose is to preserve to the parties, in case no appeal was taken from the order made, all the rights possessed under the original law. One desiring to take advantage of the remedial rights granted, must appeal from the order when made, otherwise his remedy remains unchanged. His rights are not prejudiced.

Plaintiff having failed to take advantage of the act by taking an appeal from the order granting a new trial, must stand on the original law. Having taken part in the new trial, his right to have the action of the court in granting it reviewed was waived. *Trundle v.*

*Ins. Co.*, 54 Mo. App. 192.   With respect to plaintiff's appeal, the judgment is affirmed.

II.   An invalid foreclosure sale of property made under a power contained in a mortgage does not necessarily operate as a discharge of the mortgage.   It may be, and frequently is, given the effect, in equity, of an assignment of the mortgage to the purchaser.   Even payment of the secured debt, by one holding the legal title to the mortgaged property, will not, in all cases, extinguish the debt or operate as a merger.   Indeed, it will never be held to have that effect, unless such be, the intention of the one making the payment.   The validity of the mortgage is not affected by such irregular sale or payment.   It stands good for the protection of him who has purchased or paid.   The purchase or payment is held to constitute an extinguishment or assignment, according to the interests or intention of the parties.   These principles have been recognized by this court, and are well settled elsewhere.   *Johnson v. Houston*, 47 Mo. 227; *Priest v. St. Louis*, 103 Mo. 660, and cases cited; *Collins v. Stocking*, 98 Mo. 290; Jones on Chattel Mortg. [3 Ed.], secs. 811, 659; Herman on Chattel Mortg., sec. 175.

This doctrine is founded upon principles of equity and can not be applied to the injury or prejudice of one who, being misled by the conduct of the parties, has, in good faith, acting on the assumption that the mortgage was extinguished, thereby placed himself in a situation in which he would suffer loss, should a satisfaction of the mortgage or the validity of the sale be denied.

The questions of fact involving these principles, which the evidence tends to prove, seem to have been fairly submitted to the jury in the two instructions given by the court.

III.   Defendant claims that there was a misjoinder of parties defendant.   The petition charges that defend-

ants took and converted the property. The evidence shows that it was taken by Griffith and sold to Pierce, acting as agent for the type foundry. That both Griffith and Pierce knew of the Fowler mortgage, and that it was unsatisfied of record, is unquestioned. That they knew of the sale under this mortgage, and believed it to be an absolute foreclosure, was no excuse, provided there was in fact no such foreclosure, and they were not misled by the conduct of Fowler.

All persons who jointly commit a trespass are jointly liable for the consequences. The purchaser, with knowledge of the conversion, is jointly liable with the wrongful seller. The transaction is a joint conversion and creates but one cause of action. *Smith v. Briggs*, 64 Wis. 497. "An agent who, for his principal, wrongfully takes or detains or sells the goods of another, is personally liable in an action of replevin, trover or other action for the tort, even though he acted in good faith, supposing the goods to be his principal's, and although he has delivered the property to his principal." Mechem on Agency, sec. 574. That the principal is liable for the torts of his agent while acting within the scope of his authority, can not be questioned.

It does not matter that the parties acted in good faith and believed they had the right to take and dispose of the property. It may seem hard to be held for a wrong when no wrong was intended, but it is no harder than for the plaintiff, without fault on his own part, to lose his property. "The element of wrongdoing is not necessary to the maintenance of this action." *Waverly, etc., Co. v. St. Louis Cooperage Co.*, 112 Mo. 389; *Koch v. Branch*, 44 Mo. 546. We think there is no misjoinder of parties defendant.

IV. Montgomery testified as a witness on the second trial, and his evidence was preserved by the stenographer's notes. Defendants afterward gave notice

that they would take the deposition of this witness, without specifying the matters about which he would be examined. The deposition as taken simply lays the foundation for introducing on the trial evidence impeaching his testimony given on the second trial. Plaintiff's counsel was present at the taking of the deposition. The evidence of Montgomery was read on the second trial and defendants offered to read this deposition as a part of his cross-examination, but the court excluded it.

The evidence of Montgomery was very material to the issues tried. The result largely depended upon it. If the evidence was unreliable it was important that defendants should have had opportunity to establish the fact. Plaintiff was represented by counsel at the taking of the deposition of the witness, by whom he was examined on all matters brought out by defendant's examination. The deposition was taken in January, 1893, and the case was not tried until May thereafter. Plaintiff thus had ample time in which to make investigation of all matters about which the witness was examined and in which to retake his deposition if thought desirable. Moreover, it appears that some months before the deposition was taken, counsel for plaintiff was advised that defendant wished to recross-examine the witness, and that such examination was with the view of laying the foundation for his impeachment. This counsel does not deny. The witness lived in another state and at considerable distance from the place of trial, and he could not be brought before the court by its process.

In view of these facts, we are unable to see that plaintiff could possibly have been prejudiced by permitting the deposition to be read, and we can see that defendants may have been greatly prejudiced by a refusal.

While the order in which witnesses may be examined is largely within the discretion of the court, still, as the facts upon which the witness was examined came to the knowledge of defendants after his examination in chief, had the witness been present it would certainly have been an abuse of discretion to have refused.defendants the right to recross-examine him in order to elicit the entire truth, or lay the foundation for impeaching testimony. As the witness was not present and could not be brought before the court, we are of the opinion that the court did not properly exercise its discretion in the circumstances, and committed prejudicial error in excluding the deposition. For this error the judgment is reversed and cause remanded. All concur.