———————o———————

AUGUST KOCH *et al.*, Appellants, *v.* BRANCH & CROOKES, Respondents.

1. *Agency — Commissary vouchers, when stolen, what title passes to purchaser.* —'An U. S. commissary voucher is not, in the commercial sense, a negotiable instrument, and the law merchant has no application to it. It is, however, property, or rather a convenient representation of property, and when actually sold, passes by delivery, like other personal property. But the purchaser can acquire no greater right than the seller, and when the property is stolen, there can be no further transfer. An agent who collects the money on such a voucher, for an innocent purchaser thereof after the voucher has

been stolen, will be liable for its value to the original owner. A sale of the property by the agent is evidence of conversion; and, to hold him liable, it is not necessary that he should use the proceeds of the conversion for his own benefit.

2. *Agency — Conversion — What constitutes.* — The fact that one takes possession merely of stolen property, as a depositary or common carrier, is not sufficient to charge him with conversion. Some action by which it is converted into something else, as into money or other property, either by sale, exchange, or collection, or some other intermeddling, inconsistent with the owner's right, should be found, in order to make the person responsible who has obtained innocent possession.

*Appeal from St. Louis Circuit Court.*

*Finkelnburg & Rassieur*, for appellants.

*S. Knox*, for respondents.

BLISS, Judge, delivered the opinion of the court.

In February, 1864, the plaintiffs were engaged in mercantile business at Fort Smith, Arkansas, and purchased of one Hunt, an army beef contractor, a commissary voucher issued to him for $1,448. Soon after its purchase it was stolen from the store, and the thief was never discovered. In February, 1865, one Richard Branch purchased the voucher of a stranger and forwarded it to his brother in St. Louis, one of the defendants, who collected it of the government and paid over the amount to his brother, charging no commissions. He was a partner of the firm of Branch, Crookes & Co., composed of defendants, and made the collection in their name. There seems to be no dispute about the facts, and, in the trial below, the court declared, as matter of law, that the plaintiffs were not entitled to recover.

It is admitted that the defendants received no benefit from the transaction; but the plaintiffs claim that the paper was not negotiable, and continued to be their property into whosesoever hands it went; that defendants controlled it for a time, converted it into money and paid it over, and thus were the cause of the plaintiffs' ultimate loss.

A voucher of this kind is simply an account against the government, approved by the officer who received the property embraced

in it, and is paid on presentation. It is not, in the commercial sense, a bill of exchange or other negotiable instrument, and the law merchant has no application to it. It is, however, property, or rather, convenient representation of property, and when actually sold passes by delivery like other personal property. But the purchaser can acquire no greater right than that of the seller, and when the property is stolen there can be no further transfer. It does not, like a note or bill, become the property of an innocent holder by virtue of its negotiability, for he can only hold it as his own by virtue of his title, and no title can pass through a thief. This principle has no relation to the doctrine of title by purchase in *market overt*, for that is part of the common law never adopted in this country.

Admitting that Richard Branch had no title to the voucher when he sent it to the defendants for collection, does their agency in the matter so involve them in the plaintiffs' loss as to subject them to liability? The answer to this question depends upon the character given to such a voucher. If it is a mere account — a memorandum of a claim, its loss is nothing. A new one could be made just as good. But it is much 'more. It is, as we have seen, an audited demand, specifically represented by the paper, and which will be paid only on its presentation. It, therefore, represents the claim, has value in itself, is an object of barter and sale, and I can see no reason why it should not be treated as other property. The liability of those who meddle with stolen property, and do anything in regard to it, by which the owner is prevented from recovering it, has been fixed by repeated adjudications. We are referred, in this country, to Hoffman v. Carow, 22 Wend. 285, which is an affirmance by the Court of Errors of a judgment of the Supreme Court, reported in 20 Wend. 21; and to Rogers v. Hine, 1 Cal. 420. In both cases an auctioneer was held liable to the owner of stolen goods for their value, although he sold in the usual course of trade, without knowledge of the felony or the claim of the owner, and paid over the proceeds to the person for whom the sale was made. His sale was construed to be a conversion, although made for the benefit of others. The doctrine of Hoffman v. Carow has never been

departed from in New York or elsewhere that I know of, but constantly affirmed. Justice Beardsley, in Schroeppel v. Corning, 5 Denio, 240, says that "any wrongful act which negatives or is inconsistent with the plaintiff's right, is a conversion. It is not necessary that the defendant should have made use of the property in any way." In England, the ancient doctrine that title passed for everything sold in *market overt*, with the requirement that the felon must be prosecuted to conviction before the property itself can be pursued, destroys the authority in this country of many of its decisions. And yet, when nothing intervened to suspend the vindication of the owner's title, the same ruling is had as in Hoffman v. Carow, and Rogers v. Hine. In Stephens v. Elwall, 4 Maule & Selw. 259, the plaintiffs were the assignees in bankruptcy of one Spencer, and his goods, by the act of bankruptcy, became vested in them. The bankrupt sold to one Deane, who bought for a trader in America, who had a house in London, in which defendant was his clerk. Defendant received and shipped the goods to his principal, which act was held to be a conversion. Lord Ellenborough remarks: "The clerk acted under an unavoidable ignorance, and for his master's benefit, when he sent the goods to his master; but, nevertheless, his acts may amount to a conversion; for a person is guilty of a conversion who intermeddles with my property and disposes of it, and it is no answer that he acted under authority from another who had himself no authority to dispose of it." Le Blank, Justice, had held at the trial that the defendant was not liable, but, in *banc*, said that he was mistaken. For further reference to the English decisions as to what constitutes conversion, see Bacon Ab., title Trover, under subdivision B.

The cases above cited may not go quite the length of the present one, yet I can see no difference in principle. The plaintiffs are deprived of their property through the wrongful, *i. e.*, unauthorized, act of defendants. They converted it, *i. e.*, turned it into money, and paid over the money to their principal without authority. A sale of another's property evidences conversion, and a demand in those States, where it is in general necessary, becomes useless. So, by analogy, would be any other voluntary

act which changed its character and placed it beyond the reach of the owner. It is not necessary that he use the proceeds of the conversion for his own benefit.

In all these cases the defendants complain of the hardship of being held for a wrong, when no wrong was intended. It may seem hard, but it is no harder than for the plaintiffs, without fault on their part, to lose their property. And besides, the defendants, without designing to injure the plaintiffs, were, as well as their principal, guilty of neglect. No one should buy property without good reason to believe that the seller has a right to sell it. The loose habit that prevails of buying everything that is offered is but a bounty to theft. If thieves found purchasers less eager for cheap bargains, though from total strangers, they would find it less easy to follow their avocation. Public policy, as well as private rights, demands that the settled rule, that no title can pass through a thief, should not be relaxed, and those who buy it of him should be compelled to give up the property, unless they have converted it, when they should be held for its value. Factors and agents also should be held to the same accountability. It is their duty to know for whom they act, and whether they can be saved harmless if their action shall amount to a conversion of another's property. Every exoneration from responsibility in the premises but facilitates the enjoyment of the fruits of larceny, and the hardship one suffers in a case like that under consideration is but one of the every-day fruits of a want of proper caution in business.

This doctrine of conversion should not, however, be carried too far. It is not the fact that one takes possession merely of property, as a depositary or common carrier, that should charge him, but some action by which it is converted into something else, as into money or other property, either by sale, exchange, or collection, or some other intermeddling inconsistent with the owner's right should be found in order to make the person responsible who has obtained innocent possession.

With the concurrence of the other judges, the judgment of the Circuit Court is reversed and the cause remanded.