Mohr v. Langan.

## MOHR v. LANGAN et al., Appellants.

### Division One, May 14, 1901.

1. **Replevin: PROPERTY IN CUSTODIA LEGIS: PARTIES AND PRIVIES.** Goods placed in the hands of a plaintiff under a writ of replevin are *in custodia legis* until the final determination of the suit, and until that time he has no right to sell or dispose of them, and if they are sold by him or by others under his direction (for instance, by a regularly licensed warehouseman to whom plaintiff had delivered them for keeping, only and by the auctioneer to whom the warehouseman delivered them under an order from plaintiff) and afterwards defendant is adjudged to have been their owner at the time replevined, and exercising his statutory election, demands their return, such plaintiff and all privies (in this case, the warehouseman and auctioneer) are liable, as in conversion, for the value of the goods. And the liability of the privies in such case attaches whether or not at the time they aided in the sale of the goods they knew they belonged to plaintiff. (Following Mohr v. Langan, 77 Mo. App. 481, and overruling Coen v. Watkins, 62 Mo. App. 502, and disapproving of the *obiter* doctrine announced in Donohoe v. McAleer, 37 Mo. 312.)

Mohr v. Langan.

2. ———: ———: ———: THIRD PARTIES. As to parties to a replevin suit or their grantees or privies, the property is *in custodia legis* pending the determination of the suit, and can not be sold by the party in possession or levied upon by either party or their privies. But as to third persons the pendency of the replevin suit does not place the property *in custodia legis,* and does not bar their right to proceed against it by proper judicial process to establish their rights to such property as being paramount to that of either of the parties to the replevin suit. (Overruling Bank v. Owen, 79 Mo. 429.)

Transferred from St. Louis Court of Appeals.

CIRCUIT COURT JUDGMENT AFFIRMED.

*Kinealy & Kinealy* for appellants.

(1)   Plaintiff's first instruction is erroneous that Mrs. Smith's possession of the property under her order of delivery "gave her no right or authority whatever to sell or dispose of said goods." Mrs. Smith had a right to sell the goods, and she was thereby guilty of no act of conversion, and plaintiff, in the cause at bar, could in no event be entitled to a judgment. Donohoe v. McAleer, 37 Mo. 312. (2) The court erred in refusing to permit plaintiff to answer appellants' questions as to whether or not plaintiff made any demand on appellants for the personal property in question. There could be no conversion on the part of defendant Langan, who was a public warehouseman and had the goods on storage, until plaintiff made known her claim to the property and demanded same. Ross v. Clark, 27 Mo. 549; Bank v. Metcalfe, 40 Mo. App. 499; Horine v. Bane, 69 Mo. App. 486. (3) Plaintiff's instruction 2 is erroneous. No demand had been made on Langan, the warehouseman, by plaintiff, and, therefore, when Mrs. Smith appeared with the warehouse receipt and demanded the property, he had to deliver it to her, even if he had, at the request of

Mrs. Smith, "caused said goods to be hauled or carried from said warehouse or storage room to an auction house, with knowledge that said goods were to be sold and disposed of at said auction house," and he would not have been guilty of a conversion. Moreover, the instruction is erroneous, further, in telling the jury that "it is not material to such conversion whether said defendant Langan, at such time, knew of plaintiff's ownership of the goods or not." Schouler's Bail and Carriers, sec. 60; Story on Bailments, sec. 108; Edwards on Bailments, secs. 54 and 353; Pulliam v. Burlingame, 81 Mo. 111; Nanson v. Jacobs, 93 Mo. 331; Allgear v. Walsh, 24 Mo. App. 139; Dougherty v. Chapman, 29 Mo. App. 233; Bank v. Metcalfe, 40 Mo. App. 499.

*Shepard Barclay* also for appellants.

(1) Property delivered to plaintiff under an order of delivery in replevin is not in custody of the law so as to deprive plaintiff of power of disposing of it. Donohoe v. McAleer, 37 Mo. 312; Coen v. Watkins, 62 Mo. App. 502; Acker v. White, 25 Wend. 615; Gimble v. Ackley, 12 Iowa 31; Smith v. McGregon, 10 Ohio St. 461; White v. Dolliver, 113 Mass. 400; Davis v. Gambert, 57 Iowa 239. (2) Defendant, as warehouseman, was allowed to deliver the goods to the one who deposited them; or to her order, according to the obligation contained in his receipt given as warehouseman. R. S. 1899, secs. 5051, 5055; Young v. Kellar, 94 Mo. 581; Plow Works v. Iron Works, 56 Mo. App. 6; State v. Kirby, 115 Mo. 440; Hollins v. Fowler (L. R.), 7 H. L. 757; Gurley v. Armstead, 148 Mass. 267; Blivin v. Railroad, 36 N. Y. 403; Burton v. Wilkinson, 18 Vt. 186; Wallace v. Mathews, 39 Ga. 617; Spooner v. Holmes, 102 Mass. 503. (3) The trial court erred in the instruction pronouncing the judgment in

Mohr v. Langan.

the replevin action between Mrs. Smith and Mrs. Mohr to be conclusive as to Mrs. Mohr's ownership of the goods in the case at bar between Mrs. Mohr and defendant, who was not a party to the replevin action. ' 9 Ency. Pl. and Pr., 626; Westbay v. Milligan, 74 Mo. App. 179; Globe Works v. Wright, 106 Mass. 207; State ex rel. v. Branch, 134 Mo. 592; Lloyd v. Tracy, 53 Mo. App. 175; State ex rel v. Railroad, 29 Mo. App. 301.   (4)   The trial court erred in declaring that defendant, as warehouseman, could be guilty of conversion of plaintiff's property (deposited with him by a third party), "whether he knew of plaintiff's ownership of the goods or not" (as the instruction for plaintiff declared).   In a suit for conversion, an agent is not "liable who merely assists in a wrongful transfer of title, acting innocently in a ministerial capacity, without reference to the ownership of the goods."   26 Am. and Eng. Ency. of Law, 722.   The instruction on the measure of damages contained an erroneous comment on the evidence.   It told the jury they were "not bound to regard the price the goods brought at the auction house as the true value of the same," but might consider such price as evidence of the value. It was for the jury to say whether they regarded the auction sale as furnishing the true value of the goods.   It was error to tell them they were "not bound" to give all the weight they pleased to the testimony on that subject.   Rosentreter v. Brady, 63 Mo. App. 403; State ex rel. v. Chick, 146 Mo. 657; State v. Hibler, 149 Mo. 478; State v. Rutherford, 152 Mo. 124.

*Rufus J. Delano* with *O. J.* and *R. Lee Mudd* for respondent.

(1)   The possession of Smith as plaintiff in replevin "gave her no right or authority whatever to sell or dispose of the goods."   A plaintiff in replevin, obtaining possession

through the writ and bond, acquires no title through such possession. He becomes merely a custodian pending the suit and for the purpose of the suit only. The property, whether in the hands of the officer or a bonding plaintiff, remains *"in custodia legis."* Cobby on Replevin, sec. 705, p. 374; Hawkins v. Taylor, 15 Mo. App. 328; Lockwood v. Perry, 9 Met. (Mass.) 445; Bruner v. Dyball, 42 Ill. 37; Hagan v. Lucas, 10 Pet. 404. (2) The records of the proceedings in the replevin suit were competent evidence. They were not *"res inter alios."* Defendants are charged in the pleadings, not with the conversion direct, but the charge is that "the defendants then and there did aid, abet, assist, encourage, and countenance the said Smith in said wrongful conversion of said property." They defend by asserting Smith's title and they are privies with her to said proceedings. Calkins v. Allerton, 3 Barb. 171; Hughes v. United Pipe Lines, 119 N. Y. 423; Green v. Clark, 12 N. Y. 343; Burton v. Williamson, 18 Vt. 186; 2 Burr W. Jones on Law of Evidence, sec. 607; 2 Black on Judgments, sec. 604; Jamison v. Bagot, 106 Mo. 240. (3) No demand was necessary before bringing the suit. Until the judgment of the circuit court was affirmed in this court, this plaintiff had no right to the possession of the goods as they had been taken from her by replevin and put into the possession of Smith, as the plaintiff in replevin; and until the final determination of that suit in favor of this plaintiff, she had no right to possession or to demand the goods from anybody. Long before this time the goods had been sold and converted into money by Smith with the aid of these defendants, and no demand was necessary. Rosum v. Hodges, 9 L. R. A. 817; Bruner v. Dyball, 42 Ill. 34; Hawkins v. Taylor, 15 Mo. App. 238; Ross v. Clark, 24 Mo. 549; Knipper v. Blumenthal, 107 Mo. 665. (4) Plaintiff's instruction 2 is a correct declaration of the law. It is conceded

that Langan, as a warehouseman, had the right to receive the goods of Smith for storage, and may with impunity deliver them back to her.    This right of Langan is fully covered by instruction "c" given by the court.    But when, in the language of this instruction, "the defendant Langan caused said goods to be hauled or carried from his said warehouse or storage room to an auction house, with knowledge that said goods were to be sold and disposed of at said auction," he stepped outside of his privileges as a bailee and became the active agent of Smith in converting the property.    In this attitude it is immaterial to his liability whether he did or did not know of plaintiff's ownership.    Swim v. Wilson, 13 L. R. A. 607; Smelting Co. v. Tabor, 5 L. R. A. 236; Mechem on Agency, sec. 573, p. 405; Id., sec. 574, p. 405; Webb's Pollock on Torts, p. 349; Kimball v. Billings, 55 Me. 147; Koch v. Branch, 44 Mo. 542; Cooley on Torts (2 Ed.), p. 524; Id., p. 528 (side page 451); 26 Am. and Eng. Ency. of Law, p. 720; Williams v. Wall, 60 Mo. 318.

MARSHALL, J.—In June, 1894, a Mrs. Smith, replevied certain household goods from the plaintiff herein, Mrs. Mohr, claiming title thereto under a mortgage thereon executed by Mrs. Mohr.    Mrs. Smith obtained possession of the property under the writ of replevin.    Before a justice of the peace, Mrs. Smith secured a judgment.    Mrs. Mohr appealed to the circuit court, where upon a trial de novo, on March 4, 1895, judgment was rendered in favor of Mrs. Mohr for a return of the property replevied, or its assessed value of three hundred and fifty dollars, at the option of Mrs. Mohr.    After Mrs. Smith obtained possession of the goods she stored them with the defendant, Langan, a regularly licensed warehouseman, and they remained stored until March 20, 1895, and hence were intact on March 4, 1895, when the judgment of the cir-

cuit court was so rendered in favor of Mrs. Mohr. On March 20, 1895, Mrs. Smith procured defendant Langan to deliver the goods to defendant Leonori, a regularly licensed auctioneer, and on March 26, 1895, Leonori, by direction of Mrs. Smith, sold the goods at auction, and turned over the proceeds, $114.80, to Mrs. Smith. Defendant Langan knew of the replevein case of Smith against Mrs. Mohr and was a witness in the case as to the value of the goods, but it does not appear that he knew the result of the trial in the circuit court. Defendant Leonori knew nothing about that suit, nor was he aware of or put to notice concerning any infirmity in the apparent title of Mrs. Smith to the goods. After selling the goods on March 26, Mrs. Smith, on June 1, 1895, appealed the case to the St. Louis Court of Appeals, where later the judgment of the circuit court was affirmed. Mrs. Mohr then elected to take the goods and not their assessed value. The plaintiff, Mrs. Smith, failed to deliver them to the defendant, Mrs. Mohr, and the sheriff was unable to find them so as to return them to Mrs. Mohr. Thereupon, Mrs. Mohr instituted this action against Mrs. Smith, and defendant Langan, and Leonori, claiming that Mrs. Smith had been guilty of conversion of the goods, and that defendants Langan and Leonori had actively aided and abetted Mrs. Smith in selling the goods and hence they were also guilty of conversion. The value of the goods was laid at five hundred dollars. The trial court instructed the jury: (1) that the possession of Mrs. Smith under the writ of replevin conferred upon her a right to hold the goods, as a bailee or keeper, until the determination of the replevin suit, but gave her no right or authority whatever to sell or dispose of the goods, and if she did sell them she was guilty of a conversion and if the other defendants aided or abetted her in selling them they were also guilty of conversion; (2) that if Langan caused the goods to be hauled to Leonori's

auction house, knowing they were to be sold, then Langan was guilty of a conversion, adding, "and it is not material to such conversion whether said defendant Langan at such time knew. of plaintiff's (Mrs. Mohr's) ownership of the goods or not;" (3) that if Leonori received the goods at his auction house and sold them on account of Mrs. Smith or of Langan, then he, Leonori, was guilty of a conversion, and added, "and you are further instructed that in order to such holding of the defendant Leonori, it is immaterial whether or not said defendant Leonori had any knowledge at the time of plaintiff's ownership of the goods." There was a verdict for the plaintiff for $592.91, which was reduced to $500 by remittitur, and defendants Langan and Leonori appealed to the St. Louis Court of Appeals. That court affirmed the judgment of the circuit court (77 Mo. App. 481), but upon motion for rehearing, it appearing that its decision was in conflict with the decision of the Kansas City Court of Appeals in Coen v. Watkins, 62 Mo. App. 502, the case was transferred to this court, as required by section 6 of the amendment of 1884 to article 6 of the Constitution, and under that provision of the Constitution the case must be determined here "as in case of jurisdiction obtained by ordinary appellate process."

## I.

The point of difference between the two Courts of Appeals is whether property seized under a writ of replevin and turned over to the plaintiff in the suit is *in custodia legis* or not. The St. Louis Court of Appeals holds that it is, while the Kansas City Court of Appeals holds that it is not. If it is, then the plaintiff in possession can not sell it and hence can not pass a title to it even to an innocent purchaser for value

Vol 162 mo—31

and without notice, and incidentally it can not be levied upon under attachment or execution or be replevied by a third person to the replevin action during the pendency of that suit. If it is not, then the converse is true.

There is an irreconcilable conflict of authority on this question. A full reference to or a critical analysis of the conflicting decisions is impossible in the limited space proper to be observed in the decision of this case. Much of the difference arises from diverse statutory regulation, and some of it may be ascribed to the fact that some cases treat a replevin bond as similar in all essential respects to a forthcoming bond, while other cases draw a distinction between the effect of the writ when used by a third person to recover possession of property that has been seized by an officer under judicial process, and when it is used to recover property from a private citizen.

Wells on Replevin, sections 476 to 480, discusses the reasons pro and con given in the leading cases, which hold diverse views on the subject, and concludes that under the modern functions of the writ, to-wit, to try title, the plaintiff who acquires possession of goods by means of a writ of replevin does not thereby acquire title to the property, prior to the rendition of the judgment, and having no title he can convey none, pending the litigation, which will conclude or protect any one, simply by force of the possession and apparent title resulting from such possession acquired under the writ.

Cobbey on Replevin (2 Ed.), section 706, holds to the doctrine that pending the determination of the replevin suit the property is *in custodia legis*—the plaintiff has the possession but stands substituted for the sheriff, and that if the plaintiff in possession is wasting or destroying the property, or if it has a peculiar value so that in either case the loss can not easily be compensated in damages, it is within the power of the court to appoint a receiver to care for it.

In 20 Am. and Eng. Ency. Law (1 Ed.), page 1065, the common-law rule is stated that property in custody of an officer is *in custodia legis,* and can not be retaken by replevin, except when the process under which it is held is unconstitutional or the judgment void, and then it is said: "The rule now is, however, in most of the States, that an action of replevin may be maintained against an officer for goods taken by him in execution, by any person having property in the goods other than the defendant in execution; and it may also be replevied by the owner from the vendee at the execution sale; but the defendant can not maintain it.....Property which has been attached may also be taken from the hands of the officer by writ of replevin by any person entitled thereto, save the attachment debtor or the plaintiff in attachment." [Ibid, p. 1070].

The same authority (p. 1074) states the rule to be: "Replevin lies for property replevied at the suit of any person other than the defendant in the first suit. The defendant, however, can not maintain it while the action is pending. When the property has been delivered to the plaintiff in the first action, it may be taken from him by a third person claimant in the action of replevin. The fact that a judgment has been rendered in favor of a plaintiff will not hinder a stranger to the first action from maintaining another suit against the successful party.... Where the property has been taken by writ of replevin, it can not be levied upon by judicial process."

It may be observed that the last sentence of the foregoing quotation conflicts with what precedes it in the paragraph quoted, for the writ of replevin is a judicial process, and it is pointed out that property seized on replevin may be replevied by a third person from the plaintiff in the first replevin suit.

Of the cases which held that property taken under a writ of replevin remains *in custodia legis,* even when the possession

is delivered to the plaintiff in the suit, he being regarded only as standing as a substitute for the sheriff, Lockwood v. Perry, 9 Metc. 440; McKinney v. Purcell, 28 Kan. 446; Hunt v. Robinson, 11 Cal. 262; and Hagan v. Lucas, 10 Pet. 400, are fair exponents.

On the other hand, the cases which hold that the property does not remain *in custodia legis* after it has been delivered to the plaintiff in the replevin suit, and that such plaintiff may sell it and pass a good title to a bona fide purchaser, being liable to the defendant in the replevin suit for the value of the property, if he ultimately loses his suit, are fairly illustrated by the cases of Gimble v. Ackley, 12 Iowa 27; White v. Dolliver, 113 Mass. 400; Davis v. Gambert, 57 Iowa 239, Smith v. McGregor, 10 Ohio St. 461; and Ilsley v. Stubbs, 5 Mass. 280, but in no case is the proposition more clearly stated or more ably maintained than in Coen v. Watkins, 62 Mo. App. 502.

One of the reasons given for holding that the property is *in custodia legis* is, that if it can be levied upon by a third party, the plaintiff in replevin is disabled from returning it to the defendant in replevin, if the plaintiff fails in his suit, and hence, would have to pay the defendant in replevin the assessed value of the property, and still would not have the property, for it would have been taken away from him by the third party under the second replevin, or by attachment or under execution, and in this way the same property might be utilized to discharge an indefinite number of debts of the same debtor.

This position is answered in Ilsley v. Stubbs, 5 Mass. 280, by holding that it is one of the consequences likely to ensue whenever a plaintiff takes property by replevin when he is not the true owner, and by the further consideration that the right of the true owner to recover his property can not be impaired,

postponed or taken away because of the pendency of a suit involving the property between third persons who have no title to it, as against the true owner, and to which suit the true owner is not a party.

It is further answered in the case of Coen v. Watkins supra, by holding that it would be a complete excuse to the plaintiff in the first replevin for failure to return the property, to show that it had been seized under judicial process while in his hands.

On the other hand, one of the chief reasons given for holding that the property is not *in custodia legis* after it has been turned over to the plaintiff in replevin is, that such a rule would prevent the true owner from recovering his property while the first replevin suit was pending, notwithstanding the true owner was not a party to that action, did not claim title under either but held title superior to that of either party to that action, and, hence, no decision in that suit could bind or affect the true owner in any manner.

The previous decisions of this court have not clearly and definitely settled the law in this State. The first case decided was Donohoe v. McAleer, 37 Mo. 1. c. 312. After obtaining possession of the property under the writ of replevin, the plaintiff sold the property. The defendant insisted that the plaintiff was not entitled to recover thereafter as he no longer had title. The court very properly held that this was no defense. Cases are determined, ordinarily, as of the status and rights of the parties at the date of the institution of the suit. Instead of stopping here, WAGNER, J., however, added: "The defendant unlawfully detained the property, and the plaintiff resorted to proper legal means to obtain its possession. When he had so reduced it to possession, he had a right to exercise all acts of ownership over it, including its sale and transfer, without impairing any right in the prosecution of his action. Had

he been defeated in his suit after he had parted with the prop-
erty, the defendant would have been entitled to the full value."
As the plaintiff recovered judgment in the replevin case, and
as no right of any third person was involved in the case, this
statement was not necessary to the decision of the case, and,
hence, it must be accepted in the light of the facts presented for
adjudication.

In Mansur v. Hill, 22 Mo. App. 372, the Kansas City
Court of Appeals followed this decision, so far only, however,
as it held that the subsequent sale by the plaintiff in replevin
was no defense.

In Hawkins v. Taylor, 15 Mo. App. 238, the facts were
that the property had been seized on replevin in Arkansas by
Renfro against Story, and turned over to Renfro. He sold
it to his attorney, Joyner, and he sent it to Taylor, in St. Louis,
who sold it for Joyner. Hawkins had interpleaded, in the
replevin suit in Arkansas, and claimed the property. Haw-
kins instituted an attachment suit in St. Louis against Story
and summoned Taylor as garnishee. The replevin suit in
Arkansas was still pending. The St. Louis Court of Appeals
held that the writ of replevin conferred no title upon Renfro;
that his possession, acquired under that writ, was a mere tem-
porary right of possession, and that Renfro could not sell the
property so as to defeat the title of the true owner; and that
the money in Taylor's hands represented the property, and,
hence, the proceedings were stayed until the determination of
the case in Arkansas. LEWIS, P. J., however, said: "The
order of delivery in replevin confers no title. It gives only a
temporary right, which may terminate upon a judgment against
the plaintiff. He can not sell the property so as to defeat the
title of the true owner. [Bruner v. Dyball, 42 Ill. 34.] 'He
has, however, a possession which the defendant, or the real
owner, has no right to disturb. The property is in the custody

of the law.   [Hagan v. Lucas, 10 Pet. 400.]"

The result reached in that case was undoubtedly right, for all the parties claiming title to the property were parties to the suit in Arkansas, and their respective rights could be adjudicated in that State.   But it will be noticed that in the remarks quoted, the learned judge held that when property is turned over to a plaintiff in replevin, even the true owner can not disturb that possession; this, too, without qualifying the statement as to the rights of the true owner not being affected by a litigation to which he was not a party.

In Metzner v. Graham, 57 Mo. 404, it was held that when property has been seized on attachment and is in the hands of the sheriff awaiting judgment, it is *in custodia legis* and can not be seized and sold on a special execution, issued by another court of co-ordinate jurisdiction, in a proceeding commenced subsequent to the levy of the attachment, but that the sheriff should return the special execution with an indorsement that the property is in his possession under a writ from a different court, and the plaintiff in the special execution may then have the matter transferred under the statute to the court where the attachment originated, where the conflicting claims could be settled.   It will be observed, however, that this was not a replevin case, the property was in the hands of the sheriff and not in the possession of one of the parties, and, hence, it can only be of service in determining a replevin case in the event that the rule of law be established that the property is *in custodia legis* even when it is in the possession of the plaintiff in replevin.

In Bates County National Bank v. Owen, 79 Mo. 429, it appeared that certain live stock were seized on execution.   A third party replevied them and received possession of them under the writ.   Thereafter, the sheriff levied on them under other executions against the same debtor.   EWING, C., said:

"The general rule is, that property in legal custody is not subject to be seized by other judicial process, that when it is held under judicial process, it can not be seized by virtue of other judicial process. · [Stout v. La Follette, 64 Ind. 365 ; Pipher v. Foredyce, 88 Ind. 436, s. c. ; 22 Am. Law Reg. 665 ; Metzner v. Graham, 57 Mo. 404.] In Hagan v. Lucas, 10 Pet. 400, it is said, in speaking of a similar case : 'On the giving of the bond the property is placed in the possesion of the claimant. His custody is substituted for that of the sheriff. The property is not withdrawn from the custody of the law. Where vendees of a judgment debtor obtain possession of property by virtue of a writ of replevin, and by this process take it from the hands of the sheriff, it can not, while the action of replevin is pending and undetermined, be again levied upon under another execution issued against the vendees.' [Pipher v. Fordyce, supra.] This view disposes of the case, and we consider it unnecessary to examine further."

This case did not involve a sale of the property by the plaintiff in replevin, pending the determination of that action, but did involve the right of third persons, not parties to the replevin suit, to levy on the property before the determination of that suit.

Thus, Donohoe v. McAleer, 37 Mo. 312, holds that the plaintiff in a replevin suit, who has obtained possession of the property under the writ of replevin, may sell the property, pending the litigation, subject to being liable to the defendant, on the bond, for the assessed value thereof, if he ultimately loses the case, while Bank v. Owen, 79 Mo. 429, holds that property in possession of a plaintiff in replevin, can not be levied upon by third persons under any kind of a 'judicial process. The Donohoe case proceeds upon the idea that the property, after it is turned over to the plaintiff in replevin, is not *in custodia legis,* while the Owen case is based squarely upon

the ground that it is *in custodia legis.*

In Missouri, the action of replevin is controlled entirely by statute. Chapter 56, Revised Statutes 1899, is intended to provide for every contingency liable to arise between the parties to such an action. The statute does not attempt, however, to regulate the procedure in case third persons have or assert a right to the property hostile to both the parties to the replevin suit. Such proceedings by third persons are governed by the general principles of law. The general provisions of the statute are briefly these: Section 4463 prescribes the essential requisites for the petition; section 4464 provides that upon the institution of the suit the court, or judge or clerk in vacation, shall make an order requiring the defendant to deliver the property to the plaintiff, and if it is not obeyed, requires the sheriff to take the property and deliver it to the plaintiff; section 4465 prohibits the sheriff from so taking or delivering the property to the plaintiff, until the plaintiff delivers to the sheriff a bond, to be approved by him "to the effect that they" [the plaintiff and his sureties] "are bound in double the value of the property stated in the affidavit, for the prosecution of the action with effect and without delay, for the return of the property to the defendant, if return thereof be adjudged, and, in default of such delivery, for the payment of the assessed value of such property, and for the payment of all damages for the taking and detention thereof, and for all costs which may accrue in the action;" section 4466 provides that upon the execution of such a bond by the plaintiff the sheriff shall take the property from the defendant and deliver it to the plaintiff, unless before such delivery the defendant, with sureties to be approved by the sheriff, shall execute a bond to the plaintiff, "for the delivery of said property to the plaintiff, if such delivery be adjudged, and in default of such delivery, for the payment of the assessed value of such property," for the damages for in-

juries to the property, for its detention, and for the costs; section 4468 provides that the defendant can not give such bond and retain possession of the property, *pendente lite,* if the plaintiff alleges that the property was wrongfully taken, and the cause of action accrued within one year; section 4474 provides that if the plaintiff fails in his action, and has the property in his possession, the judgment shall be that he return the property taken or pay the value assessed, *at the election of the defendant,* and also pay the damages; section 4476 provides that if the defendant gives bond and retains possession of the property, the judgment shall be that he return the property or pay the value assessed, *at the election of the plaintiff,* etc.; section 4477 provides that a party shall not be required to make such election until the property is delivered to the sheriff on proper process, and the party have notice thereof; section 4478 provides that if the property be not delivered to the officer within ten days after process issued, he shall levy and make the assessed value thereof, the damages and costs, of the property of the party against whom the process issued; section 4479 provides that "in such case, the party's right to the property shall not be impaired by levying the assessed value thereof on the property of the other party and his sureties, or either of them; but if the property be delivered to the sheriff, and the party elect to take the value assessed, such election shall operate to vest all his right to the property in the other party;" and section 4480 provides that "the court may enforce all orders for the delivery of property as other orders of the court are enforced."

The statute clearly and conclusively contemplates that whichever party is allowed to have the possession of the property pending the litigation, shall preserve it intact, until the litigation is ended, and if he loses his suit he shall deliver it to the officer, to be by him turned over to the party adjudged

entitled to it, if such winning party elects to take the property and not the assessed value. This is clearly demonstrated by section 4477, which provides that the winning party shall not be required to make an election until the property is delivered to the officer, and by sections 4478 and 4479, which provide that if the property is not delivered to the officer within .ten days after process issued, the officer shall levy and make the assessed value, but that the winning party may still follow the property, if it can be found, and recover it, notwithstanding he has received its assessed value, and, *e converso,* that if the losing party properly delivers the property to the officer, and the winning party then elects to take the assessed value, "such election shall operate to vest all *his* [the winning party's] right to the property in the other party."

These statutory provisions manifestly treat the property as *in custodia legis,* pending the litigation, so far as the parties to the replevin suit are concerned, and exclude the right of the party in possession to sell the property during the pendency of the suit—and further preserve the right of the winning party to follow the property in the hands of any person who purchased it from the party in possession pending the litigation. The rule laid down in Donohoe v. McAleer, 37 Mo. 312, that the party in possession under a writ of replevin may sell the property and pass a good title, being liable only on his bond for the assessed value, is, therefore, no longer the law in this State, and should no longer be followed. But as the result reached in that case was right, under the facts in issue, and as what was then said about the right to sell was not necessary to a decision in that case, it is not necessary now to do more than to disapprove of the doctrine announced under the law as it is and was then declared by statute.

But while this is true, it does not follow that the property is *in custodia legis* as to third persons, so that it can not be le-

vied upon by any other kind of judicial process. Of course, it can not be seized under any other kind of judicial process by either party to the replevin suit or their grantees or privies. But the weight of authority, amply supported by logic and reason (20 Am. and Eng. Ency. Law (1 Ed.), page 1075) is that it may be seized by a third person, under any appropriate judicial process, who claims hostile to both parties to the replevin suit. This is manifestly the true rule, for, otherwise, the true owner or a creditor of the true owner, would be kept out of his own while a replevin suit was pending, and to which he or they were not parties, over which he had no control and by the judgment in which his rights could in no manner be affected, impaired or taken away, and which could not determine the title or claim of such owner or his creditor. No principle of law can be found to justify a rule which would thus postpone, at least, and might impair or effectually destroy, the rights of third persons. The common reason given for such holding, that if third persons could take the property from the possession of one of the parties to the replevin suit, he would be disabled from returning the property in case he lost his suit, and might have to pay his adversary in that suit the assessed value of the property, and still not have the property, is more specious than substantial or right. The same result would follow if his adversary elected to take the assessed value and gave him *his* title to the property, and the true owner thereafter—after the termination of the replevin suit—seized the property. The fallacy in the reason so given, lies in failing to observe that the judgment in the replevin suit only settles the controversy between the parties to that suit, and does not affect the rights of persons not parties to that suit.

All the difficulties and embarrassments suggested in the cases cited by counsel, as liable to result from allowing third persons to assert their claims to the property while the replevin

suit is pending, are completely dissipated by the simple remedy open to the party to the replevin suit from whom the possession of the property is taken under judicial process by a third party, pending the termination of the replevin suit, to plead, in such third party's action, that he held the property under a claim of title, which he was asserting in the replevin suit, and ask that the other party to the replevin suit be made a party to such new suit, and the court could bring all the claimants before it and settle the whole controversy, and if the third party prevailed and recovered the property it would end the rights of both parties to the replevin suit.   If the third party asserted his claim by replevin the matter could be thus easily decided. If the property was seized on attachment or execution as the property of a third person, either party to the replevin suit could replevy it from the officer, and by proper notice to his adversary in the first replevin suit could require him to join in his effort to defeat the levy under the attachment or execution, and in this way the rights of the parties to the original replevin suit would be preserved, and if the third party prevailed in his suit, their right to a return of the property in the original suit would be concluded.   So the difficulties which have induced some courts to hold that third persons can not assert their rights pending the replevin suit, are clearly seen to be chimerical, and are wholly insufficient to justify a holding that the rights of third persons can be postponed, affected or impaired by the acts of parties in suits to which they are strangers.

For these reasons we conclude that, as to the parties to a replevin suit or their grantees or privies, the property is *in custodia legis* pending the determination of that suit, and can not be sold by the party in possession or levied upon by either party or their privies, but that as to third persons the pendency of the replevin suit does not place the property *in custodia*

*legis,* and does not bar their right to proceed against it by proper judicial process to establish their rights.

The case of Bank v. Owen, supra, not being consonant with the rule here announced, must be overruled.

Applying this principle to the case at bar it follows that Mrs. Smith had no power or right to sell the property pending the determination of the replevin suit, and it was a fraud upon Mrs. Mohr's rights for her to sell it, especially after she had lost the case in the circuit court and the property had been adjudged to Mrs. Mohr. It also follows that the purchaser from Mrs. Smith acquired no title, and Mrs. Mohr had a right, under sections 4478 and 4479, to receive the assessed value and also to follow the property in the hands of the purchaser. But this Mrs. Mohr could not probably do, as it was personal property and had been sold at auction to various unknown persons.

## II.

It is ably and strenuously argued, however, that defendant Langan is a regularly licensed warehouseman, and as he received the goods from Mrs. Smith he could not question her right to demand their return, nor set up a paramount title in any one else, and that no demand was made on him for the goods by Mrs. Mohr before this suit was begun, and, hence, he is not liable in this action for the conversion of the goods. The general rule of law is as contended for. [Story on Bailments, sec. 108; Edwards on Bailments, sec. 54 and 353; Dougherty v. Chapman, 29 Mo. App. 233; Pulliam v. Burlingame, 81 Mo. 111; 26 Am. and Eng. Ency. Law (1 Ed.), pp. 720 to 723.]

But this general rule will not protect a bailee who, having notice of the rights of the real owner, yet aids and abets the

Mohr v. Langan.

bailor in wrongfully converting the goods. [Nanson v. Jacob, 93 Mo. 331; Koch v. Branch, 44 Mo. 542; Williams v. Wall, 60 Mo. 1. c. 321; Dusky v. Rudder, 80 Mo. 400.]

Langan was a witness in the replevin case of Mrs. Smith against Mrs. Mohr. True, he testified only as to the value of the property in dispute. But he knew the character of the action, and that both parties claimed title to the property. It does not appear that he knew the result of the trial in the circuit court, but when Mrs. Smith asked him to redeliver the goods to her he was advised that she intended to send them to an auction house to be sold, and he aided her in doing so. Under these circumstances he was put to notice as to the result of the trial, and must be held to have known what it was in his power to ascertain, that the title to the property had been adjudged to be in Mrs. Mohr. In addition to this, having reached the conclusion that the property, as to Mrs. Smith and Mrs. Mohr, was *in custodia legis,* and that Mrs. Smith had no right to sell it, it follows that as Langan knew of the replevin suit, he knew that Mrs. Smith had no power to sell it, and as he aided her in doing so, he thereby became a party to the conversion, and his general exemption as a warehouseman is no protection to him, for he acted outside of his duties as such warehouseman. [26 Am. and Eng. Ency. Law (1 Ed.), p. 714-713, and cases cited in notes.]

"The proposition that persons deal with property in chattels or exercise dominion over them at their peril, is so well established as to have the force of a maxim in modern law. And the only limitation of this principle is found in dealing with the liability of agents and servants acting innocently under authority of a principal, in possession or actual custody of the property, but whose title is really defective.

"Generally, the capacity in which a defendant commits a wrong, can never enter as an element in the determination of

his liability; therefore, an agent invested with possession, who sells or otherwise deals with the property as owner, can never justify under the authority of his principal. But there are circumstances where, from the nature of the agent's act, and the character of his possession, the law absolves him from liability, although the rights of the owner are thereby infringed. A servant in charge of goods upon his master's premises does not ordinarily have such possession as would render him liable for a refusal to deliver at the request of the owner, of whose rights he is ignorant. Neither is an agent or servant liable who merely assists in a wrongful transfer of title, acting innocently in a ministerial capacity, without reference to the ownership of the goods. If B, having a wrongful possession of A's goods, employs a broker to sell, who sells to C, and all the broker does is to send bought-and-sold notes to B and C, no action of trover or any other form of action can be maintained against the broker. Upon the same principle, a carrier who transports goods from place to place; a packer who prepares goods for shipment; a watchmaker who repairs a watch and returns it to the person who left it; a farrier who shoes a horse for a thief; a broker who simply negotiates a contract of sale; can not be charged for assisting a wrongdoer in his conversion, if ignorant of the rights of the owner.

"A rule which seems to embrace all cases, and forms an accurate test is: 'One who deals with goods at the request of a person who has the actual custody of them, in the bona fide belief that the custodian is the true owner, is excused for what he does if the act is of such nature as would be excused if done by the authority of the person in possession, if he was the finder of the goods or intrusted with their custody.'" [26 Am. and Eng. Ency. Law, pp. 720 to 723, and cases cited in notes.] .

No principle found in the rules here quoted, or in the cases cited, would excuse Langan, for he did not act innocently,

but on the contrary with notice of Mrs. Smith's fraud in selling the property when she had no right to do so, and he aided her in her wrongdoing and thereby became liable.

The second instruction given for the plaintiff declared Langan liable if he aided Mrs. Smith in removing the goods to the auction house, knowing they were to be sold, and then declared it immaterial whether Langan knew of the plaintiff's ownership of the goods or not.

In Koch v. Branch, 44 Mo. 542, a United States commissary voucher was stolen from the owner. Thereafter, it was purchased by an innocent third person from a stranger, and forwarded by the purchaser to the defendant in St. Louis, who collected it, and, acting without any notice of the infirmities of the title of the holder, turned over the proceeds to the principal. The agent was held liable to the true owner although he acted innocently and without notice. BLISS, J., in delivering the opinion of the court, after calling attention to the fact that the doctrine of title by purchase in *market overt* is a part of the common law that has never been adopted in this country, said:

"The liability of those who meddle with stolen property, and do anything in regard to it, by which the owner is prevented from recovering it, has been fixed by repeated adjudications. We are referred, in this country, to Hoffman v. Carow, 22 Wend. 285, which is an affirmance by the Court of Errors of a judgment of the Supreme Court, reported in 20 Wend. 21; and to Rogers v. Hine, 1 Cal. 420. In both cases an auctioneer was held liable to the owner of stolen goods for their value, although he sold in the usual course of trade, without knowledge of the felony or the claim of the owner, and paid over the proceeds to the person for whom the sale was made. His sale was construed to be a conversion, although made for the

benefit of others. The doctrine of Hoffman v. Carow has never been departed from in New York or elsewhere that I know of, but constantly affirmed. Justice BEARDSLEY, in Schroeppel v. Corning, 5 Denio 240, says that 'any wrongful act which negatives or is inconsistent with the plaintiff's right is a conversion. It is not necessary that the defendant should have made use of the property in any way.' In England, the ancient doctrine that title passed for everything sold in *market overt,* with the requirement that the felon must be prosecuted to conviction before the property itself can be pursued, destroys the authority, in this country, of many of its decisions. And yet, when nothing intervened to suspend the vindication of the owner's title, the same ruling is had as in Hoffman v. Carow, and Rogers v. Hine. In Stephens v. Elwall, 4 Maule & Selw. 259, the plaintiffs were the assignees in bankruptcy of one Spencer, and his goods, by the act of bankruptcy, became vested in them. The bankrupt sold to one Deane, who bought for a trader in America, who had a house in London in which defendant was his clerk. Defendant received and shipped the goods to his principal, which act was held to be a conversion. Lord ELLENBOROUGH remarks: 'The clerk acted under an unavoidable ignorance, and for his master's benefit, when he sent the goods to his master, but nevertheless, his acts may amount to a conversion; for a person is guilty of conversion who intermeddles with my property and disposes of it, and it is no answer that he acted under authority from another who had himself no authority to dispose of it.' LE BLANK, Justice, had held at the trial that the defendant was not liable, but, in Banc, said that he was mistaken. For further reference to the English decisions as to what constitutes conversion, see Bacon Ab., title 'Trover,' under subdivision B.

"The cases above cited may not go quite the length of the present one, yet I can see no difference in principle. The

Mohr v. Langan.

plaintiffs are deprived of their property through the wrongful, i. e., unauthorized, act of defendants. They converted, i. e., turned it into money, and paid over the money to their principal without authority. A sale of another's property evidences conversion, and a demand in those States, where it is in general necessary, becomes useless. So, by analogy, would be any other voluntary act which changed its character and placed it beyond the reach of the owner. It is not necessary that he use the proceeds of the conversion for his own benefit.

"In all these cases the defendants complain of the hardship of being held for a wrong, when no wrong was intended. It may seem hard, but it is no harder than for the plaintiffs, without fault on their part, to lose their property. And besides, the defendants, without designing to injure the plaintiffs, were, as well as their principal, guilty of neglect. No one should buy property without good reason to believe that the seller has a right to sell it. The loose habit that prevails of buying everything that is offered, is but a bounty to theft. If thieves found purchasers less eager for cheap bargains, though from total strangers, they would find it less easy to follow their vocation. Public policy, as well as private rights, demands that the settled rule, that no title can pass through a thief, should not be relaxed, and those who buy it of him should be compelled to give up the property, unless they have converted it, when they should be held for its value. Factors and agents also should be held to the same accountability. It is their duty to know for whom they act, and whether they can be saved harmless if their action shall amount to a conversion of another's property. Every exoneration from responsibility in the premises but facilitates the enjoyment of the fruits of larceny, and the hardship one suffers in a case like that under consideration is but one of the everyday fruits of a want of proper caution in business.

"This doctrine of conversion should not, however, be carried too far. It is not the fact that one takes possession, merely, of property as a depositary or common carrier, that should charge him, but some action by which it is converted into something else, as into money or other property, either by sale, exchange, or collection, or some other intermeddling inconsistent with the owner's right should be found in order to make the person responsible who has obtained innocent possession."

This case was followed and approved in Williams v. Wall, 60 Mo. l. c. 322, and it was said, by way of supplement thereto, "And authorities are not wanting. . . . that the same liability attaches to an unauthorized act, whether the actor was conscious of the wrong he was committing or not."

In Dusky v. Rudder, 80 Mo. l. c. 407, Koch v. Branch, and Williams v. Wall, supra, were expressly followed, and it was said: "The controlling question in this record is, whether a conversion of plaintiff's sheep or their wool, or the proceeds of either, took place as charged in the complaint. If the evidence establishes that a conversion of plaintiff's property occurred in either of these ways, and that the defendant in any manner aided in such conversion, the law holds him responsible therefor. True, a mere bailee, whether common carrier or otherwise, may receive property from one not rightfully entitled to the possession and may deliver it in pursuance of the bailment, if this is done before notice of the rights of the real owner. After such notice he acts at his peril. [Cooley on Torts, 456.] And the evidence tends to show notice to the defendant, and a conversion by him of the property of the plaintiff and of its proceeds. Any wrongful act which negatives or is inconsistent with the plaintiff's right is per se a conversion."

Koch v. Branch, supra, has also been approved in the following other cases: Bank v. Morris, 114 Mo. l. c. 266; Ess

v. Griffith, 128 Mo. 1. c. 62.

In Ess v. Griffith, supra, the rule was thus stated by MACFARLANE, J.: "All persons who jointly commit a trespass are jointly liable for the consequences. The purchaser, with knowledge of the conversion, is jointly liable with the wrongful seller. The transaction is a joint conversion and creates but one cause of action. Smut v. Briggs, 64 Wis. 497. An agent who, for his principal, wrongfully takes or detains or sells the goods of another, is personally liable in an action of replevin, trover or other action for the tort, even though he acted in good faith, supposing the goods to be his principal's and although he has delivered the property to his principal. [Mechem on Agency, sec. 574.] That the principal is liable for the torts of his agent while acting within the scope of his agency, can not be questioned. It does not matter that the parties acted in good faith and believed they had the right to take and dispose of the property. It may seem to be hard to be held for a wrong when no wrong was intended, but it is no harder than for the plaintiff, without fault on his part, to lose his property."

To which consideration it may be added that it is no greater hardship on the agent who has assisted in the conversion, to be held liable to the owner, than it is to the purchaser to have to give up the property to the true owner after he has paid his money for it.

Auctioneers and brokers who, in the regular course of business, received and sold stolen goods, from the person in possession, without notice and in good faith, have been held liable in conversion, by the true owner. [26 Am. and Eng. Ency. Law (1 Ed.), p. 720, and cases cited in notes.]

Following these precedents, it must be adjudged that the second instruction given for the plaintiff is not erroneous. For the same reasons, the third instruction given for the plaintiff,

holding the auctioneer liable although he acted innocently and without notice, must be adjudged proper. True, the goods were not stolen goods, but they were *in custodia legis,* as to Mrs. Smith and Mrs. Mohr, and it was fraud for Mrs. Smith to sell them, and, therefore, the same principle applies as in case of assisting in the sale of stolen goods.

The judgment of the circuit court is affirmed. All concur.