GENERAL MOTORS ACCEPTANCE CORPORATION, Petitioner and Appellant, *v.* MUNICIPAL COURT OF SAN LORENZO, Respondent and Appellee.

No. 7071. Argued April 27, 1937.—Decided April 1, 1938.

*Emilio S. Belaval* for petitioner. *J. Villares Rodríguez* and *L. Morales Contreras* for plaintiff in the main action.

MR. JUSTICE WOLF delivered the opinion of the court.

The appellant herein is the assignee of the rights of the vendor under a conditional sale. The object of the sale, a used Ford automobile, 1932 model, was attached by Cruz Guzmán in a suit for damages against the conditional buyer, when the latter still owed $130 to perfect his title to the car. The conditional sale had been duly recorded, and the General Motors Acceptance Corporation, as claimant (*tercerista*), filed a statement under oath that it was the lawful

owner of the vehicle, put up the requisite bond for twice its assessed value, and obtained possession of the same from the marshal. This took place on the 23rd of August 1934. On the 5th of September 1934, the attaching plaintiff filed a motion before the Municipal Court of San Lorenzo, wherein he alleged that he had learned on that date that the claimant had publicly advertised the auction of the automobile in question, and requested a court order restraining the claimant or its agents from selling or disposing of the vehicle in any manner. On the same date, the court acceded to the plaintiff's motion. Two days later the General Motors Acceptance Corporation moved to have such order set aside alleging, among other grounds, that its bond had released the attachment and was in full substitution of the automobile as a guarantee for the satisfaction of an eventual judgment in favor of the plaintiff. After a hearing the municipal court affirmed its original order and on certiorari to the District Court of Humacao, the latter found no error in the municipal court. The claimant has appealed.

The only error assigned by the appellant is the following:

"The District Court of Humacao erred in annulling the writ of certiorari issued on the 10th of November, 1934, against the Municipal Court of San Lorenzo, because a claimant can dispose of the property recovered under a bond from the moment that such recovery takes place and because the annulmment of the writ is against the provisions of the Code of Civil Procedure of Puerto Rico which regulates the proceeding for the trial of the right to real and personal property."

Essentially, the question to be determined is the nature of a claimant's possession after he has filed a bond, but before his claim to the property has been judicially approved. It is not important, for the purposes of this case, to discuss the problem from the viewpoint that the present claimant is incidentally the assignee of a conditional seller, nor that its claim is ultimately founded on that relationship, as the question before the municipal court was

exclusively one of a claimant alleging ownership. In its oath to obtain the possession of the automobile, the General Motors Acceptance Corporation did not disclose the conditional nature of its claim.

The District Court of Humacao came to the following conclusion:

"After a study of the petition filed in this case; considering that, according to section 2 of the 'Act providing for the trial of the right to real and personal property,' the property subject to this proceeding shall remain in possession of the claimant in 'custodia legis'; having examined the terms of the bond put up by the claimant pursuant to provisions of the statute applicable to the case; and the obligation being, in the first place, the return of the property subject to the proceeding, the satisfaction of its value, etc., remaining only as a subsidiary matter in case such property should not be returned in the same condition that it was received; there appearing from the record that the claimant, availing himself of the holding in his possession of the property mentioned, really attempted to alienate it before his right to the same had been shown and judicially approved, attempting to execute on his rights in an alleged conditional sale contract between the claimant and the defendant in the principal suit in which the order of attachment, which gave rise to this proceeding, was issued, all of which forced the plantiff in such original action to act swiftly and also the court with jurisdiction over the proceeding, in order to prevent such a sale, as to which, considering the proceeding and the urgent nature of the step taken, the lower court acted correctly; and considering the record as a whole and the law applicable to the case, the writ of certiorari heretofore issued is annulled and it is ordered that the record be returned to the lower court so that it may continue to act in the same according to law."

The appellant attempts to establish the proposition that once a claimant has filed the required bond the property ceases to be in *custodia legis*. He cites two paragraphs from Corpus Juris and relies principally on his interpretation of the act governing the trial of the right of property, Act of March 14, 1907, p. 308 (Code of Civil Procedure, 1933 ed., p. 109).

The most important thing to determine is the nature of the claimant's undertaking under the bond. Section 3 of the pertinent act, *supra,* provides:

"The bond shall be conditioned that the party making such claim, in case he fails to establish his right to such property, shall return the same to the officer making the levy, or his successor, in as good condition as he received it, and shall also pay the reasonable value of the use, hire, increase and fruits thereof from the date of said bond, or in case he fails so to return said property and pay for the use, hire, increase and fruits of the same, he shall pay the plaintiff the value of said property, with legal interest thereon from the date of the bond, and shall also pay all damages and costs that may be awarded against him."

In spite of the appellant's summary dismissal of this section, we think it is the one principally concerned with and germane to the bond or undertaking. In unmistakable terms it enumerates the conditions subject to which the bond is to be executed. Primarily the obligation is to return the property to the attaching officer in substantially the same condition that it was at the time the claimant obtained its possession. The appellant stresses the point that elsewhere in the act, it is provided that the judgment against the claimant and his sureties shall be for the value of the property, etc. (section 14), and that such judgment may be satisfied by returning the property in its original condition (section 15). These provisions have nothing to do with the undertaking in the bond and the real question before the court turns on whether such undertaking is in the nature of a forthcoming or delivery bond or partakes of the nature of an absolute release or dissolution bond. The former type releases the property only from the custody of the officer; it does not release it from the lien of the attachment. The latter type is generally conditioned upon the performance of whatever judgment is rendered and is therefore considered as releasing or dissolving the attachment lien. 5 Am. Jur. 139, section 901.

Section 2 of the pertinent act, *supra*, reads:

"The claimant shall also execute and deliver to the officer who made such levy his bond, with two or more good and sufficient sureties, to be approved by such officer, payable to the plaintiff in such writ, for an amount equal to double the value of the property so claimed, to be assessed by such officer; *Provided,* That when more than one writ has been levied said bond may be made payable to all the plaintiffs in the several writs levied. Said bond shall inure to the benefit of all the plaintiffs in the several writs according to their respective priorities in time of levy. Upon the approval of such bond and delivery of the property to the claimant, the same shall be deemed *in custodia legis,* and shall not be taken out of his possession by any other like writ or writs, but said writs may be levied on the same by giving notice to the claimant, and in such cases the claimant's bond shall also inure to the benefit of the several plaintiffs in such writs according to their respective priorities."

From the discussion regarding the conditions of the bond, we conclude that it was more like a forthcoming bond than anything else.

The better interpretation of section 2, *supra*, seems to be that the property is still in the custody of the law although its physical possession has been transferred from the marshal to the claimant. This point, as far as we know, has not been previously passed upon by this court, but there is jurisprudence in the United States which supports the conclusion. Under the Spanish Code of Civil Procedure the claimant (*tercerista*) had to wait until the decision of his claim to obtain the possession of the property. (Manresa, *Ley de Enjuiciamiento Civil,* 3rd ed., vol. 5, p. 607.)

In *Hagan* v. *Lucas,* 10 Pet. (U.S.) 400, 403, the Supreme Court of the United States said:

"But it is insisted in this case, that the bond is substituted for the property; and consequently, that the property is released from the levy. The law provides, that the property shall be delivered into the possession of the claimant, on his giving bond and security in double the amount of the debt and costs, that he will return it to the sheriff, if it shall be found subject to the execution. Is there

no lien on property thus situated, either under the execution or the bond? That this bond is not in the nature of a bond given to prosecute a writ of error, or on an appeal, is clear. The condition is, that the property shall be returned to the sheriff, if the right shall be adjudged against the claimant. Now, it would seem, that this bond cannot be considered as a substitute for the property, as the condition required its return to the sheriff. The object of the legislature in requiring this bond, was, to insure the safe-keeping and faithful return of the property, to the sheriff, should its return be required. If, then, the property is required by the statute, and the condition of the bond, to be delivered to the sheriff on the contingency stated, can it be liable to be taken and sold on execution?

"If the property be liable to execution, a levy must always produce a forfeiture of the condition of the bond. For a levy takes the property out of the possession of the claimant, and renders the performance of his bond impossible. Can a result so repugnant to equity and propriety as this, be sanctioned? Is the law so inconsistent, as to authorize the means by which the discharge of a legal obligation is defeated, and at the same time, exact a penalty for the failure? This would, indeed, be a reproach to the law and to justice. The maxim of the law is, that it injures no man, and can never produce injustice. On the giving of the bond, the property is placed in the possession of the claimant. His custody is substituted for the custody of the sheriff. The property is not withdrawn from the custody of the law. In the hands of the claimant, under the bond for its delivery to the sheriff, the property is as free from the reach of other processes, as it would have been in the hands of the sheriff."

Again, at page 404, we find this:

"The bond given by the claimant Lucas, bears a strong analogy to a forthcoming bond. By the latter, the goods were to be delivered to the sheriff, on the day of sale; by the former, the goods were to be delivered to the sheriff, so soon as the right shall be determined against the claimant. In neither bond, is the plaintiff in the execution consulted, as is done in the replevy bond, as to the sufficiency of the surety; nor do either of these bonds, like the replevy bond, operate as a judgment, until a breach of the condition. In fact, the bond under the Alabama statute is substantially a forthcoming bond."

The case just cited has not, to our knowledge, been modified. See also *Mohr* v. *Langan,* 63 S.W. 409, 412, and *Sanders* v. *Farrier,* 271 S.W. 293, at p. 298.

In the present case, furthermore, the claimant was the assignee of the conditional seller of an automobile. Under the jurisprudence of this court, when such sale is made, a property right passes to the conditional buyer subject to a condition subsequent. *Montalvo* v. *Valdivieso,* 38 P.R.R. 487; *Rubio* v. *Nin,* 48 P.R.R. 952. The Conditional Sales Act in force here in Puerto Rico (Act of April 13, 1916 (p. 126) as amended by Acts Nos. 40 of 1925 (p. 246) and 88 of 1925 (p. 670)) gives the vendor a right to obtain the repossession of the chattel sold (section 6) on noncompliance by the buyer of any of the obligations imposed upon him by the contract. Nevertheless, the act provides for a hearing within 10 days and for a 30-day term of grace within which the seller must hold the property and within which the buyer may comply with the obligations of the contract. It has likewise been decided that an attachment creditor steps into the shoes of the conditional buyer and may enforce his rights. If, in the case under consideration, the seller's assignee had been permitted, as he pretended, to sell the automobile on or about the 5th of September, 1934, it would have achieved indirectly what it could not have done directly under the Conditional Sales Act, for only 13 days had elapsed since the filing of his claim of August 23, 1934. The attaching creditor therefore would have been deprived of his rights as successor to the conditional buyer.

Thus the property being considered in *custodia legis,* the claimant could not sell it and the action of the Municipal Court of San Lorenzo was correct.

Judgment should be affirmed.